EUREKA BLOTTER BATH CO. v. NICHOLAS et al.

(Circuit Court, N. D. Illinois, E. D. June 1, 1906.)

No. 27,491.

PATENTS—INFRINGEMENT—BLOTTER BATH.

The Fairbank & Cantril patent, No. 603,841, for a blotter bath, while it shows only a slight advance over the prior art, covers a device more simple and effective than any previously used, and discloses invention; also *held* infringed.

In Equity. On final hearing.

Thatcher, Griffin & Wright, F. J. Griffin, and David H. Fletcher, for complainant.

Banning & Banning, for defendants.

KOHLSAAT, District Judge. The bill herein was filed originally against John M. Nicholas alone for infringement of claims 2 and 4 of patent No. 603,841, granted to Fairbank & Cantril for a blotter bath on May 10, 1898. Nicholas having been defaulted, the other defendant, Hoggson & Pettis Manufacturing Company, which is the manufacturer of the device alleged to have infringed, was permitted by the court to appear and answer. This it did, denying infringement and the patentable novelty of the device. The case is before the court on final hearing.

Claims 2 and 4 in suit read as follows:

"2. A blotter bath, comprising a pan having a transverse partition near one end, an absorbent composition having a flat top surface placed in the pan, a metal cover for the pan having a heavy absorbent filling that has a smooth surface and is adapted to overlie the absorbent in the pan, and the cover, and absorbent therein, adapted to stand on end in the vacant end of the pan, as and for the purposes stated."

"4. A blotter bath, comprising a pan, an absorbent composition having a flat top surface placed in the pan and a cover fitted to the pan, and an absorbent composition having a flat surface combined with the cover, for the purposes stated."

They call for a cover and pan, or body, provided with a porous composition whose faces fit closely upon each other. The cloths to be moistened are placed between the two. No free water, except such as is found upon the cloths and the lower face, is used. The space formed by the fact that the absorbent block is shorter than the outer pan serves for a free movement of the end of the cover when it is raised. This arrangement is simple and very like the prior art. The device works easily, and seems to have captured the trade in a substantial manner. It is claimed for it that by reason of the porous composition of the absorbent used, the water, never being free, is kept wholesome and sweet. This is not set out in the specifications of claims, and evidently was not deemed one of its features when the patent issued.

Complainant's expert lays great stress upon the absorbent character of the composition called for in the patent as compared with what he terms the "capillarity" of the prior art. This, of course, applied to the material used in making the device. Ordinarily, the substitution of one well-known material for another, without a new result, does not in-

volve invention. It is so held in Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, with reference to the substitution of porcelain for wood in the manufacture of door knobs, and in the substitution of wood for stone in street paving blocks of a peculiar form in the case of Brown v. District of Columbia, 130 U. S. 100, 9 Sup. Ct. 437, 32 L. Ed. 863. The same rule is followed in Smith v. Goodyear Dental Vulcanite Company, 93 U. S. 486, 23 L. Ed. 952; but the court therein limits the decision in Hotchkiss v. Greenwood to cases involving only greater durability and cheapness in the product. "It does not decide," says the court, "that no use of one material in lieu of another in the formation of a manufacture can, in any case, amount to an invention, or be the subject of a patent. If such a substitution involves a new mode of construction, or develops new uses and properties of the article formed, it may amount to invention. * * * In Crane v. Price, 1 Webst. Pat. Cas. 393, where the whole invention consisted in the substitution of anthracite for bituminous coal in combination with a hot-air blast for smelting iron ore, a patent for it was sustained. * * * In Kneass v. Schuylkill Bank, Fed. Cas. No. 7,875, the use of steel plates, instead of copper, for engraving, was held patentable. So has been the flame of gas, instead of the flame of oil, to finish cloth. These cases rest on the fact that a superior product has been the result of the substitution—a product that has new capabilities and that performs new functions."

The prior art discloses numerous blotter-bath devices. The patent to Hall, No. 216,738, dated June 24, 1879, calls for a blotter-bath body or box and lid constructed substantially like that of the patent in suit. The blotter sheets are placed on the ducts or canals formed in the bottom of the body beneath them, from which they absorb the required moisture. The cover acts as a presser, and is adjusted in practically the same manner as that of the patent in suit. No intervening substance between the water and the cloths is used. Patent No. 366,421, issued to Mendenhall July 12, 1887, for a "copying bath," operates in much the same manner as that last named to Hill, differing mainly in the use of a false bottom, from which the moistening is obtained. The Champion patent, No. 369,691, issued September 13, 1887, calls for the use in a copying pad holder of a "porous material, preferably of unglazed tile." The dampener consists of two pans—the outer one water tight, and the inner one made of a porous material—and a lid so arranged as to make either or both air-tight. The outer pan is larger than the inner, thereby leaving a channel or passageway for water entirely around the inner or porous pan. Under the latter is a pad, which takes up the water when necessary and feeds it to the unglazed tile of the inner pan, which in turn supplies the water to the cloths to be moistened by absorption. This patent, to my mind, clearly sets out the principle of the application of moisture to copying pads by means of a porous composition. It lacks the manner of adjusting the lid shown in the patent in suit, the porous composition in the cover, and other of the details of the patent in suit. The patent to Razall, No. 438,896, for a "copying pan," calls for absorbent material in the lid and at the bottom of the pan. It is fed from a reservoir acting automatically. The surplus water, it is stated, is absorbed by the bottom pad.

The specifications seem to contemplate what complainant's expert calls "capillarity," rather than absorption, so far as any material for the pads is named. But the patent in terms calls for absorbents. The lid, or cover, is hinged, and adapted to be turned back. The moisture moves from top to bottom. The Van Slyke patent, No. 456,453, granted July 21, 1891, has the absorbents in cover and pan, with a wall across one end, forming an open space in which the cover could be made to stand when open. Moistening the absorbent is accomplished by pouring water on the pads. When it is desired to supply moisture for some time to come, water is poured into the cover. A perforated plate is placed upon the lower absorbent. The absorbents set out in the patent do not come within the term "absorbent" as interpreted by complainant's expert. With this exception, however, this patent comes very near to being an anticipation of that in suit. The absorbent of the patent issued to Osborne April 12, 1892, for a "blotter bath," consists of a stone which supplies moisture to the blotters, just as in the patent in suit. The cover, also, serves as a weight. It differs from complainant's device in arrangement and in the fact that it has no absorbent material for use upon the top, or cover.

The foregoing brief summary of the prior art will suffice to show the condition thereof at the date of the issue of the patent in suit. The defendant is operating under patent No. 714,512, granted to John M. Nicholas November 25, 1902, for a "copying bath." It calls for certain details of construction differing in nonessentials from the patent in suit, resembling, as defendant insists, more nearly the prior art than it does that of complainant's patent. While the material used in the defendant's device differs in the proportion of its elements from that of the complainant, it is substantially the same. Defendant was himself for a considerable time in the employ of the complainant, and acquired his knowledge of complainant's device in that way, and also became familiar with its desirable features. The evidence shows that the method of the patent in suit produced a very desirable result in the evenness of the moistening of the blotters. The advance, if any, by the complainant over the prior art, is necessarily very slight. The result of that advance, according to the evidence, must have been very great. The unglazed tile of Champion and the stone of Osborne, both, it seems to me, anticipate in part complainant's method of distributing moisture. Both, however, lack the absorbent in the cover. Both are decidedly more cumbersome. All the prior art was open to the defendant. He chose complainant's device, which is still protected by the patent. It appears satisfactorily from the record that there was yet something lacking in the blotter-pad art. Free water had not been disposed of, and as a consequence uneven and blurred copies were produced.

The novelty of complainant's device over the prior art is slight. Indeed, the art itself is simple, and incapable, it would seem, of radical advances. Taking into consideration all the facts appearing in the record—the simplicity and neatness of complainant's device, the fact that it has supplanted the other devices and holds the market in its line, the fact that Nicholas was formerly in the employ of the complainant and took advantage of the information there acquired, and

that complainant's device had brought about a new result along the lines of efficiency and labor—I am disposed to grant it the protection asked for.

The prayer of the bill will therefore be granted.