### WOOD v. KAHN et al.

(Circuit Court, S. D. New York. July 3, 1911.)

PATENTS (§ 328*)—INVENTION—PROCESS OF DIVIDING DIAMONDS.

The Wood patent, No. 839,356, for a process of dividing diamonds, consisting of dividing a larger diamond to form a plurality of smaller diamonds, by sawing into the larger diamond from opposite sides, the saw cuts meeting at an angle to form blocks from which smaller diamonds can be formed, the purpose being to save waste involved in the splitting method, does not disclose the invention or discovery of an art, and is void for lack of patentable invention.

In Equity. Suit by St. John Wood against Louis Kahn and others for infringement of the Wood patent, No. 839,356, for a process for dividing diamonds. On final hearing. Decree for defendants.

Mr. Prindle, for complainant.
Mr. Galston, for defendants.

HOUGH, District Judge. The patent in suit is described as "a process for dividing diamonds." The patentee says in his specification:

"I have discovered that I can saw from different sides of a rough diamond and can make the saw cuts meet at any desired angle, and that by disposing the saw cuts according to certain methods which I have invented, which this discovery makes possible, I can divide the diamond to such advantage that there results a most important increase in the weight of the finished diamonds from a given rough crystal."

The methods which he declares he has invented are fairly summed up in the first claim, viz.:

"The process of dividing a larger diamond to form a plurality of smaller diamonds, which process consists in sawing partially into the body of such larger diamond from opposite sides, said saw cuts meeting at an angle to form blocks from which smaller diamonds can be formed."

The application of the process is shown by the subjoined figure:

It is therefore observable that this patent is not for any diamond, or shape of diamond, nor is it for any machine, nor even for the result of any mechanical operation, in the sense that such result is peculiar to a given apparatus. What is sawed is the ordinary diamond as mined, what is produced is the ordinary diamond of commerce, and the means by which the first is transformed into the second (so far as this patent is concerned) is a diamond saw, which is admittedly old. It is therefore necessary to consider the evidence to ascertain the exact nature of the alleged invention. From the depositions it appears that great difficulties attend the sawing of diamonds, arising from the hardness of the material, the existence of flaws or "knots" in diamonds, and the fact that every diamond contains four "grains," which run parallel to the faces of the theoretically perfect natural diamond, which is an octohedron. It has therefore long been the practice to form the diamond of commerce by splitting as much as possible, instead of by sawing. This splitting process, owing to the peculiar nature and numerous grains of a diamond, involves waste.

There is a thought (and it seems to me a meritorious one) involved in this patent. That thought is a certain boldness of conception and a willingness to risk present loss in order to gain knowledge useful in the future. It had long been known that a diamond could be sawed in every direction indicated by Wood; but whether it could be so sawed or treated without losses more than counterbalancing possible gain was, in the opinion of the few persons who had considered it, uncertain. Wood ventured, and has demonstrated that without undue loss his saw cuts can be made to meet at a common point. Yet this result is obtained from diamonds of the familiar kind, by machinery which is confessedly old, operated in the same manner as formerly and by the same men, except that Mr. Wood has told the workmen how to direct their saws, and in so doing originally took the risk of ruining certain diamonds of his own upon which he experimented.

This is the view of the patent most favorable to complainant. The patentable category into which all processes must fall is that of art; for, as has been frequently pointed out, a process eo nomine has never been mentioned in any of the patent acts, and the very fact that the patent is for a process negatives the idea that it is either a machine, manufacture, or composition of matter. Therefore it must be an art.

Whether a bold thought, put into practice in disregard of possible present loss of most expensive material, can ever constitute a patentable art, is a subject worthy of discussion. An exact, though homely, analogy to what Mr. Wood has done may be found in the proverbial advice to "grasp a nettle firmly." Nettles were old, and the habit of handling them gingerly was doubtless likewise old, and the first man who risked present pain and possible injury, and grasped it firmly and boldly, made a discovery, and doubtless embodied his discovery in a proverb. But it is doubted whether the process, however excellent, is patentable. It is not, however, necessary to go back to first principles in this matter; for it is admitted, and is indeed insisted upon as the great merit of this patent, that what results from it is economy of material alone. The invention consists in economically separating the diamond, and results solely from the manner in which the lines of separation or sawing are arranged with reference to the material to be separated or sawed.

No legal or patentable difference is perceived between the art of sawing diamonds and the art of sawing wood, and in Brown v. District of Columbia, 130 U. S. 87, 9 Sup. Ct. 437, 32 L. Ed. 863, this matter was considered. The patent there before the court (94,063) was for "an improved mode of cutting blocks for street pavements," and the invention consisted "in a novel method of cutting and splitting blocks for wood pavement in such a manner that * * * two finished blocks [were produced] without more waste of timber than that occasioned by the saws" (130 U. S. 91, 92, 9 Sup. Ct. 438, 32 L. Ed. 863); and the conclusion of the court upon this patent is as follows:

"To cut the block so as to get the grain in a particular way, and so as to avoid waste, requires some mechanical skill, without involving an invention." 130 U. S. 103, 9 Sup. Ct. 442 (32 L. Ed. 863).

It follows that the bill must be dismissed, not for lack of ingenuity or commendable boldness, but for the lack of that quite different thing, "patentable invention."

NOTE.—Decision in this case has been grounded on the point thought fairest for all concerned, because it is radical. So far as the evidence herein is concerned, however, it should be stated that I am wholly unable to find that any case for infringement has been made out against L. and M. Kahn.