## CUTLER MAIL CHUTE CO. v. AMERICAN MAILING DEVICE CORP.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 32.

1. PATENTS ⊚⟹328—INVENTION—MAIL CHUTE.
     The Cutler patents, No. 758,128 and No. 943,183, each for improvements in mail chutes, and relating to devices for making the glass panel which forms the face of the chute removable for the dislodgment of mail matter which may have caught therein, and to locking devices for such panels, as to claims 3, 4, 5, 6, 7, 8, 14, and 19 of the former patent and claims 3, 21, 34, 39, 40, and 41 of the latter *held* void for lack of patentable invention.

2. PATENTS ⊚⟹26(1)—INVENTION—PATENTS FOR COMBINATION.
     Where all the elements of invention are old but one and the addition of that one is not invention, even a combination claim is void.

     Learned Hand, District Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Cutler Mail Chute Company against the American Mailing Device Corporation. Decree for complainant, and defendant appeals. Reversed.

The action is upon two letters patent, both issued to Joseph Warren Cutler for improvements in mail chutes. Claims 3, 4, 5, 6, 7, 8, 14, and 19 of No. 758,128 are in issue, which patent is hereinafter called the first Cutler patent, and is dated April 26, 1904 (application filed September 14, 1903). Claims 3, 21, 34, 39, 40, and 41 of No. 943,183 are likewise in suit. This patent is hereinafter referred to as the second Cutler patent, and is dated December 14, 1909 (application filed December 12, 1906).

Upwards of 2,000 hotels, apartment houses, and office buildings in this country contain mail chutes of this plaintiff or its predecessors; all said devices being made under one or more of three patents now expired, and granted to the present patentee's brother. These expired patents are Nos. 284,951, 336,038, and 390,347. Of these the latest date of issue is 1888. The pioneer nature of these earlier patents is evidenced by the now widely extended use of the word "mail chute," which is found in the specification of No. 336,038, while the expired Cutler patents themselves are all for a "letter box connection." The brothers Cutler seem to have originated the thing and its accepted name, and the nature and extent of the monopoly accorded the first inventor may be best judged from the first claim of the earliest patent:

"In combination with a building of two or more stories a mail receptacle consisting of a box or receptacle located in a lower story and a conductor extending thence upward to a higher story and there provided with an inlet opening."

---

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A mail chute is plainly of no great service unless the letters therein deposited are collected by the official letter carriers. Accordingly for years, and before the issuance of either patent in suit, the subject has been regulated by the Postmaster General, pursuant to act of Congress. Act Jan. 23, 1893, c. 41, 27 Stat. 421 (Comp. St. 1916, § 7277), Postal Regulations, § 672. Officially the mail chute consists of a "mailing chute" and a "receiving box."

These patents (so far as involved in this case) relate only to the chute portion, which receives letters falling oftentimes from a great height, and acquiring considerable velocity in descent. In 1905 the Postal Department made a regulation that all portions of the interior of the chute should be "easily reached by postal authorities, but not by other persons." This meant, of course, that some method of gaining access to the interior should be provided, not involving dismantling or disintegration of the completed chute, nor violence on the part of the investigator.

Under the expired Cutler patents plaintiff had supplied with the approval of the postal authorities the considerable number of chutes above mentioned, of a style known herein as Model B. The panel (i. e., the glass front) of such chute could not be removed from the metal body to which it was affixed without possible straining of metal parts and certain dismemberment of the shopfitted panel and sides. The postal rule of 1905 resulted from the construction by plaintiff of a chute responding to the first patent in suit; but its operation was deferred until July, 1907, upon representations that the plaintiff had many old chutes on hand and many unfilled orders therefor.

Of the claims in issue (in the first Cutler patent) the third is the most general, and is as follows:

"A mail chute embodying a plurality of superposed tubular sections, and having an independently movable panel to permit access to the interior of the chute without removing adjacent chute sections."

The fifth claim describes the panel merely as "removable," and as having "portions projecting inwardly beyond the meeting edges of the panel and the walls of the chute."

The seventh claim restricts the opening to one side, calls for a "removable panel for closing the opening," and describes the "sides of said panel [as] projecting inwardly beyond the adjacent walls of the chute."

Claims 4, 6, and 8 may be said to constitute a class, in that they all describe as an element of invention the joints between panel and chute. Claim 6 is typical:

"A mail chute having an opening at one side to permit access to the interior thereof and a removable panel for closing the opening, the meeting edges of the panel and walls of the chute being removed from the corners of the chute and said panel having projecting portions extending inwardly beyond said meeting edges to prevent lodgment of mail matter therein."

Claims 14 and 19 are as follows:

"A mail chute embodying the channel or body open at one side having the flanges at the edges of said opening in combination with a door or closure embodying the side frames each provided with parallel flanges, and the glass panel secured between them, a portion of the door-frame extending between the flanges on the body."

"A mail chute embodying a channel or body portion open at one side and having the inwardly extending flanges at the sides of said opening and the removable panel for closing said opening and a plurality of locking devices for securing it."

Of the claims in issue of the second Cutler patent plaintiff's counsel suggests that No. 21 is typical. We find it so, and it is as follows:

"The combination with a support, of a mail chute having a removable portion or panel to permit access to the interior thereof, means for securing the chute to the support and a movable member for preventing access to the securing means and also securing the removable portion or panel of the chute in position and a key lock for securing said member in position."

The defendant is a corporation which began business in 1914. In several buildings it erected chutes, some at least of which were examined by the

plaintiff before suit, and were asserted to be infringements. There is no contest over the style of construction first employed by defendant. It will be referred to as "defendant's first form of chute."

Prior to notice of infringement, and several months before this action was begun, this first style of construction was abandoned, and what will be called "defendant's second form of chute" put on the market. Plaintiff, while denying that defendant's second form is actually made as testified to, still claimed infringement. The court below held that both of defendant's chute forms infringed all the claims in suit, and decreed accordingly; defendant took this appeal.

Frederick P. Fish, C. P. Goepel, and Harrison F. Lyman, all of New York City, for appellant.

Frederick F. Church and G. Willard Rich, both of Rochester, N. Y., and Melville Church, of Washington, D. C., for appellee.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] We accept the statement of counsel that the objects aimed at by this patentee, and sought to be covered as to the means of attainment, by the claims in suit are three: (1) The provision of a secure, but readily removable and replaceable, panel, giving easy access to the chute interior. (2) The provision, between said panel and the fixed portion of the chute, of a joint so positioned and formed as to prevent or lessen the catching of descending letters, etc., in such necessary joint or meeting of parts. (3) Furnishing an efficient means of securing in closed or operative position the panel aforesaid. We are satisfied that he has attained them all, and defined the means of accomplishment by claims. This record presents the questions whether plaintiff's means required invention in the devising, and whether defendant, in attempting to reach the same goal (open to all), has been guilty of infringement.

The inventive worth of what is disclosed by the applicant for a patent largely depends on the extent to which the field in which he works has been fertilized by preceding laborers. The attainment of a desirable and even difficult result does not permit the court to forbear scrutiny of the means of attainment; for it is only with that department of intellectual effort that the patent law is concerned. Wood v. Kahn (C. C.) 189 Fed. 399, affirmed 198 Fed. 403, 117 C. C. A. 193. This is fundamental, even though it remains true that, if many have sought the result without success, or the thing produced supplies a real public demand therefor, the fact of success is some evidence of invention.

When a department of human enterprise has, for the term of years allowed by law, been exclusively occupied by one person, through ownership of pioneer and basic patents on which a large business has been erected, such lawful monopoly necessarily tends to divert independent inventors or improvers from a field in which their only present market is the patent owner, who is doing very well without them, and as naturally produces improvements devised by or on behalf of the owner of the business, built on the basic patents, that oftentimes rather satisfy a mercantile desire for the continuance of patent protected

trade, than any scientific difficulty, or public demand.   There is noth-ing unlawful about this, but when improvement patents in such long restricted, if not completely monopolized, branch of trade, are put to the test of forensic discussion, the absence of prior or even contem-porary efforts in the same direction cannot, with any force, be used as evidence or argument to support them.

This plaintiff's business is the most striking example of such lawful restriction of competition, as yet presented to us.   Not only did the expired Cutler patents create in effect a monopoly of the mail chute concept, but, since there was small market for the product, unless the letter box at the chute bottom became part of the postal system of the country, former departmental regulations practically required con-formity to the expired patents, and the present rules confine official recognition to chutes on which we think certain of the claims in suit must plainly read, until some bold inventor finds a closure for a box, which is not a door, lid, cover, or casing.   It accordingly results that the art prior to the patents in suit consists substantially of the expired Cutler patents, supra, and the plaintiff's practice under them.

We therefore briefly indicate what (material to this issue) plaintiff did under the expired patents, what the patents in suit disclose, and what defendant does or has done.

The 2,000 chutes put out by plaintiff as above stated, under (espe-cially) No. 390,347, were formed of parts, assembled into a continuous vertical conduit, showing everywhere, except at mail entrances, the transverse horizontal section of Fig. 4 of that patent.

*Fig. 4.*

The metal chute body (*L*) is seen formed into a rectangle, whereof one side is omitted, except the "flanges" (*ii*); to which flanges the glass frame (*B*) is affixed, by clamp strips (*a, b*) within and without the box of the chute, and riveted together (*k*).   The clamp strips were made of elastic metal as long as the chute section, secured over the flanges by the rivets, and the glass panel then slid between them, the elastic clamps yielding to let it in[1] and holding the panel in place by pressure.

A desideratum, in any device of this kind, was and is to make an interior surface so smooth that letters would not catch in chinks, cracks, or the like, and so clog the chute.   Therefore the rivets were counter-sunk, and the "bar" interposed between superimposed chute sections was beveled so that its lower edge projected into the chute slightly,

---

[1] In Fig. 4 only one clamping device is shown; that on one side being omit-ted to show plainly the flange construction.

like the eave of a roof. This was to deflect falling letters from the necessary crack, where one clamped panel ended and another began, as is set forth in the specification. In this construction, as may be plainly seen, the glass panel was not intended to be in the vertical plane of the chute flanges, the inner clamp (b) did not go into the corner, or cover the whole flange, and that clamp projected into the completed chute. As long as the rivets held, and no one disturbed the fitting of the superposed sections, there was no crack or crevice on the panel interior, except as shown above, and also where sections met, and that was protected by the bevel of the "bar" over one and under the next glass front.

Nevertheless clogs occurred, and to remove them it was necessary to remove the panel; that (says the patentee) was a simple matter, but the proper replacing "absorbed my attention," because such removal disturbed the shop fit, and if at some part of its length (several feet) the inner clamp (b) sprang away from the glass, a crevice appeared, fatally attractive to falling letters.

The first patent in suit discloses a movable panel, in the form described a door, hinged at one side and provided with studs on the other, which studs engage appropriate parts of a locking device arranged on the proper side of the chute body. The structural differences (so far as material) between chutes under this patent and those of the expired patent may be seen in the subjoined detail in transverse section of a hinge corner; the opposite, or locking corner is the same, so far as here important. The diagram is part of Fig. 4 of No. 758,128.

It is here seen that the chute body is flanged as before (18), that the panel now has a frame (19) around which the elastic inner and outer clamps (22, 23, not necessarily integral) pass, holding the glass front (21) in place by pressure. This construction meets postal requirements (apparently passed to cover such construction), in that the key of the contrivance can be and is given the letter carrier, and, if a clog occurs, he opens the door of the choked section, pulls out the letters, and locks the door again. Letters still catch; this device enables them to be reached by means of a key, instead of a mechanic.

The second Cutler patent discloses a system of affixing the several chute sections to the wall by means placed underneath or behind hinged crossbars, on the panel front of the structure, which, when locked in place, at once secure the panel doors in shut or operative position, and cover up the means by which the chute is fixed to the supporting wall.

Defendant's first form of chute, gives in transverse horizontal section the form below (one corner only shown).

The second form of alleged infringement produces a corner said by plaintiff to be the following (on each corner):

Defendant's chute section has a lid or cover, seen to fit over the projection or ridge *A* in the two last diagrams, and locking is effected by a cross bar binding the top of the lid (panel) when in closed position. To remove the panel and get at chute interior, the bar is unlocked and removed (it is not hinged), which enables one to lift the panel out of its engagement at the end remote from the locking bar. All defendant's chutes are fastened to the wall by screws, with heads defaced.

The detailed statement, now concluded, seems to us to fully show, the simple, if not elementary, nature of the mechanical or scientific disclosures on which the patents in suit base exactly 100 claims. That mail chutes grew in popularity while the basic patents were alive, that the Postmaster General was glad to have a locked chute, as well as a locked letter box at its bottom, and that these facts combined to make the more elaborate and expensive construction marketable, we do not doubt; the evidence is full to the point; but neither fact proves invention; and it may be added that the now patented devices do not prevent or lessen clogging of chutes. They only provide easier access to the choked region, and facilitate cleaning chute interiors.

247 F.—33

This cause does not require us to consider whether there was invention in any detail of the disclosed construction. That particular form (for the claims in suit) is but one embodiment of the concept of the claims, nor does the defendant's apparatus bear any resemblance worth mention to plaintiff's specific disclosures.

Of the first patent, we hold the third claim invalid, because there was no invention in putting an "independently movable" panel, door, lid, or cover on the mail chute of the prior art. The language of Victor, etc., Co. v. Hawthorne, etc., Co., 178 Fed. 455, 101 C. C. A. 439, is thought applicable to this claim.

In so far as claims 5 and 7 of this patent advance as an element of invention a panel "having portions projecting inwardly beyond" the chute walls, they suggest nothing patentable. The claims on their face describe a door or lid that projects slightly into the receptacle it closes. The fact is old to common knowledge, and there is nothing in the specification to require separate consideration.

Claims 4, 6, and 8 present the gist of controversy. Taking No. 6 as typical, the question is whether there was invention in (a) removing the meeting edge of panel and chute from the chute corner, and (b) projecting a part of the panel (substantially as specified and for the purpose stated) inward and beyond the meeting place of door and chute.

[2] The positioning of the meeting edge is just where it was in the chute of the expired patent, and the inner clamp of that patent projected into the chute; there was a vertical crack at the meeting of clamp and flange, and so is there in the construction of the claim. The only novelty shown or claimed is to treat the inner clamp strip as a part of the panel and give it the shape shown in diagram above (*23*). As pointed out, a general claim for any inward projection is invalid, and, when these more specific claims are examined, we find the old crack or meeting place still existent, and the means (i. e., projection) of minimizing its evils no more than an obvious adaptation of the bevel of the expired patent and common knowledge. That one bevel is vertical and the other horizontal is an immaterial difference. All the elements of these claims are old, and the function suggested for their combination is not reached by new method or means; nor do we think it is attained at all, as letters still stick for the same reasons as prevailed before this form of construction. We find these claims invalid for lack of patentable invention over the prior art. Where all the elements of invention are old but one, and the addition of that one is not invention, even a combination claim is void. Herzog v. Charles Keller Co., 234 Fed. 87, 148 C. C. A. 101.

We may add that, even assuming validity, the defendant's second form plainly avoids infringement.

The fourteenth claim presents no question not covered by the foregoing, while the nineteenth requires us to hold, as we do, that the addition of locking devices generically to a mail chute is not invention; the point needs no more than mention. It is not pretended that there is any similarity between the locks of the parties.

The second patent required us only to point out, that defendant does

not have any "means of securing the chute to the support" other than the screws of an art older than mail chutes: nor has it any means for at once preventing access to its screws and "securing" its "removable panel" (i. e., locking its lid), other than a bar lock, which likewise antedates the special art under consideration.

A mail chute is a long, narrow conduit, built of boxlike sections set on end. To fasten such boxes to a support, and put doors or lids on them, and then lock them, so that no one can either open them or take them down without violence, is doubtless a good thing; but a claim for the means or method of accomplishment must show invention in the mechanism. If in this claim the word "conduit" were substituted for "mail chute," the nature of plaintiff's demand would be plainer. There is no magic in "mail chute"; the mechanical question, and therefore that of invention, is just what it would be as to any other boxlike, sectional conduit for the transmission of solids by gravity, unless the inventive thought has mechanical relation to the peculiar thing transmitted. This claim has not, and the specification does not help it out; therefore it shows no invention.

The decree below is reversed, and the cause remanded, with directions to dismiss the bill for lack of invention in the claims sued on, with costs in both courts.

LEARNED HAND, District Judge. I concur in the foregoing, with the following exceptions: I think claims 4, 6, and 8 of the first patent valid, but infringed only by the defendant's first structure. I do not think claims 21, 39, 40, and 41 of the second patent infringed, and therefore do not pass on their validity. As a result I should give the plaintiff a decree upon claims 4, 6, and 8 of the first patent. The practical result of this would not be substantially different from that reached by the majority of the court.