## THORDARSON ELECTRIC MFG. CO. v. GENERAL TRANSFORMER CORPORATION.

### No. 6310.

Circuit Court of Appeals, Seventh Circuit.

Dec. 7, 1937.

Max W. Zabel, and Arthur W. Carlson, both of Chicago, Ill., for appellant.

Samuel E. Darby, Jr., and Floyd H. Crews, both of New York City (Lowell C. Noyes, of Chicago, Ill., of counsel), for appellee.

Before MAJOR, Circuit Judge, and LINDLEY and BARNES, District Judges.

LINDLEY, District Judge.

Defendant appeals from a decree finding valid and infringed, patent No. 1,718,-176 to Nordendale, enjoining defendant from further infringement and directing an accounting.

The patent issued June 18, 1929, upon application filed February 2, 1929. The "invention relates to a new and improved method of making core laminations used in magnetic circuit apparatus," says the patentee. The claims are substantially identical; No. 3, typical, being as follows: "Method of making core laminations from a long, relatively narrow strip which consists in cutting successive pairs of oblong openings transversely of and entirely within the strip, and then, by successive operations, cutting off E-shaped bodies alternately from one side and the other of the strip."

It will be observed that the claim of invention lies solely in a method of punching on a press, from a strip of material, E-shaped and I-shaped sections. The use to which the cut-off sections are to be put is no part of the claim. But the desirability of the method lies in the fact that the E and I punchings after production are combined in building the normal electric transformer. They may be used in any device to which their specific form makes them adaptable. Such laminations were used by Schwedtmann, No. 594,657 and Burnand (British) of 1901. The patentee makes no claim for invention in anything other than the method by which he produces the punchings.

In following the teaching of the patent, a punch press is used, the punch having upon it projecting elements for punching, when operated with a die having comparable openings, first, I-punches, and, second, E-punches, in succession, in one operation. As a strip of material is fed into the press, in its first position the I-sections are cut. Thereupon the strip is pushed forward to its second position, and there an E-section is cut from one portion of the strip remaining after the I-sections have been cut. Then the strip is again pushed forward to its third position, where another E-section is cut from the portion of the strip adjoining that from which the first E-section was cut. After the strip has advanced to the third position, each succeeding operation of the punch press cuts simultaneously two I-sections and two E-sections, leaving at the side of the strip two narrow margins claimed to be useful in guiding the material, thus increasing the speed of operation. There is another function, punching holes, likewise simultaneously, which is not of material interest here.

In the prior art, Burnand (British) suggested that two I-pieces be punched not from a strip but from a rectangular piece of sheet metal and that after the cutting of the I-pieces the remaining piece of material be cut in half to produce the two E-

pieces. Thordarson, No. 1,356,178, in his patent for a machine, accomplished a like result in a somewhat different manner. His punch was operated in a horizontal plane rather than in a perpendicular one. He first punched two I-pieces and when the strip of material was moved to the second position, two more I-pieces were punched out of the adjoining part of the metal. Simultaneously one of his punch elements moved down with the part of the punch which pressed out the I-pieces and cut across the entire width of the strip, so that with each operation, after the preliminary step, two I-pieces and two E-pieces were punched. Thordarson did not leave margins on the material but used all of it. After the preliminary step, the operations of both the patentee and Thordarson accomplish the same result, namely, the simultaneous production of two I-pieces and two E-pieces.

■ An early textbook, contained in the "International Library of Technology," taught that when a die is to be laid out, "before the outline of the hole and the exact location of the gauge pin are marked on the surface of the lower die, the most economical way of punching the stock must be determined," and that the die must be so designed "that the greatest number of punches can be obtained from a given weight of stock in order to reduce the waste in material to the lowest figure." The text writer said that such designs require "a great deal of judgment" and that a good plan is "to cut a few pieces of paper to the required outline of the punching" and "then, by arranging them in different ways," determine "the most economical system." The early art (Freeman, Die, and Die Making) discloses a six-position punch die, operating upon a piece of strip stock, where each unit area of the strip is operated upon in six successive positions which it occupies in the punch die. This predecessor in the art leaves strips of material on opposite sides of the stock. Henius, No. 316,034, 1885, shows a strip intended to pass through a multiple position press. It is obvious, therefore, that the design of a punch and die with plural punches and so designed as to prevent waste of material was old in the art of die making and that it had long been considered a matter of mere design. The patentee cannot claim invention for mere plurality of die and punching positions on one die and punch.

■ The patentee did not claim invention in the machine itself, that is, the die and the punch, but his sole assertion in that respect lies in a socalled method of producing I and E pieces. What he really claims is the function of the machine rather than the device itself. Inasmuch as it is well settled that one cannot have a patent for the function or effect but only for the machine which produces the same, under repeated decisions the claims are invalid because they are within this category. Morley Sewing Machine Co. v. Lancaster, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715; The Corn Planter Patent, 23 Wall. 181, 23 L. Ed. 161; Corning v. Burden, 15 How. 252, 14 L.Ed. 683; Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899; Electric R. Signal Co. v. Hall R. Signal Co., 114 U.S. 87, 96, 5 S.Ct. 1069, 29 L.Ed. 96; O'Reilly v. Morse, 15 How. 62, 120, 14 L.Ed. 601; LeRoy v. Tatham, 14 How. 156, 174, 14 L.Ed. 367. Under the doctrine announced, this court in Continental Can Co. v. Cameron Can Machinery Co., 76 F.2d 173, held a similar method claim void as being for nothing more than the function of the machine. See, also, Smith Engineering Works v. Nordberg Mfg. Co., 68 F.2d 492 (C.C.A.7).

Irrespective of the correctness of this conclusion, however, we are of the opinion that the accomplishment of the patentee was the exercise of mere mechanical skill, such as was involved in the case of Brown v. District of Columbia, 130 U.S. 87, 9 S.Ct. 437, 442, 32 L.Ed. 863. There the court said: "The process of making the block is given in patent 94,063, the claim of which is 'the hereindescribed method of cutting blocks for wooden pavements, so as to form by two cuts, or one cut and one splitting, two finished blocks, with top and bottom level, or in parallel planes, and the sides beveled, one side being inclined with the fiber, and without waste of material, substantially as set forth. * * * To cut the block so as to get the grain in a particular way, and so as to avoid waste, requires simple mechanical skill, without involving invention." So here the art of building presses and dies with multiple punching projections and corresponding depressions in the dies was old. The product of such process, I and E sections, used for the specified purpose, was old. To design dies so as to save material by laying out figures upon paper so as to achieve the best arrangement possible was

38

incidental to and a part of the art of building dies. To omit or to retain the narrow margin on either side of the strip was known to the art. When this patentee took the ordinary punch press and placed on its face, a plurality of projections and so located these projections and the laying out of the die, as to utilize material without waste and achieve coincident facile production, he was exercising only mere mechanical skill.

There is evidence further of what to our mind was complete anticipation in a prior public use, that of Jefferson Electric Company; but in view of our conclusions, it is not necessary to discuss the evidence relating thereto.

█ The claims are void as being for a function and as describing merely the exercise of mechanical skill. The decree of the District Court is reversed, with directions to proceed in accord with this opinion.