VICTOR TALKING MACH. CO. v. HAWTHORNE & SHEBLE MFG. CO.

(Circuit Court of Appeals, Third Circuit. February 28, 1910.)

No. 57 (1,233).

PATENTS (§ 328*)—INVENTION—AMPLIFYING HORN FOR TALKING MACHINES.

The Dennison patent, No. 832,896, for an amplifying horn for talking machines, which consists of a horn of the old form made in two separable and telescoping parts for convenience in shipment, and provided with well-known means for uniting the parts for use, is void on its face for lack of invention.

Appeal from Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by the Victor Talking Machine Company against the Hawthorne & Sheble Manufacturing Company. Decree for defendant (168 Fed. 554), and complainant appeals. Affirmed.

See, also, 173 Fed. 617.

Horace Pettit, for appellant.

Samuel Owen Edmonds, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. This is an appeal by the complainant in the court below from a decree sustaining a demurrer of the appellee, the defendant below, to the bill of complaint.

The suit was brought to restrain infringement of United States letters patent No. 832,896, for improvements in amplifying horns for talking machines, issued to appellant in October, 1906, as assignee of one Wilburn N. Dennison.

The grounds of the demurrer to the bill filed by the complainant were, in substance, that the letters patent in suit were invalid and void, because the improvements therein set forth lacked invention and did not require the exercise of the inventive faculty.

In the specifications of the patent, it is stated:

"My invention relates to amplifying-horns for talking machines and more especially to means for detachably mounting the horn upon the machine and for connecting sections of the horn in a readily detachable manner, as will be hereinafter described and claimed."

The specifications thus refer to the drawings:

"In the drawings, the reference-numeral 1 indicates the motor-casing; 2, the turn-table and record thereon; 3, the sound-box; 4, the tapering hollow pivoted sound-box-supporting-tube; 5, the supporting-bracket for said arm and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the amplifying-horn; 6, a yoke for holding the amplifying-horn in position; and 7, a thumb-screw for securing the yoke 6 to the bracket 5.

"The above described parts are not of my present invention, which relates to the amplifying-horn 11 and the tubular member or sound-conveyer section 8 thereof.  *  *  *

"The section 8 flares outwardly, and its outer end receives the small conical or tapering end of the detachable and separable body-section 11 of the horn, this small end fitting therein. The section 8, it might be said, forms a part of the horn as well as of the machine, for while it forms the small end portion or section of the horn as a whole, yet it is secured to a stationary part of the machine and is in fact the means for supporting the body of the horn upon the machine. In fact, however, the horn consists of these two telescopic separable tapering sections 8 and 11, the larger end of the former receiving within it the small end of the latter, and as a further part of my invention I provide connecting means for these sections comprising interengaging or interlocking parts carried thereby. These means are upon the large end of section 8 and the small end of section 11, and as a preferred, convenient, and efficient construction I employ an inclined slot 10, preferably in section 8, and the lug or pin 12 in section 11."

Fig 1.

Fig 2

There are 19 claims in the patent, of which the third, eighth, thirteenth and fifteenth are called to our attention by the appellant. The difference in the claims is one of verbiage rather than of substance. The third claim may be taken as fairly representing them all:

"An amplifying-horn consisting of a sound-conveyer section having means for engaging a normally stationary support, an amplifying-horn section detachably mounted upon said conveyer-section, the ends of said conveyer and horn sections telescoping, and interlocking means carried by said sections and adapted to hold them in telescoped relation, the said horn section being removable from said conveyer-section while the latter is mounted upon its support."

As the means for engaging the sound conveyer-section with the stationary support are exactly the same as those employed before the division was made between the sound conveying section and the horn section, it is apparent, both from the claims and the specifications, that the patentee's so-called invention was nothing more than the making of an old form of talking machine horn in two pieces, which are detachable or separable, with means for uniting them and securing them when united. From the tapering form of the horn, it is obvious that the diminishing end of the horn section could be so constructed as to easily enter the widening end of the conveyer section, the conical formation readily lending itself to the tightening of the parts as the one is pressed into the other. The means of securing the parts when thus put together, by a small pin or lug on the inside of the horn part, to engage in the cam-like slot in the conveyer part, and the further drawing together of the parts by turning the pin in the slot, are means so obvious to any mechanic, that no invention can possibly be involved therein. It is, in fact, only a modification of the old and well known bayonet joint.

The advantages urged by counsel for the appellant, that make his two-piece horn an improvement on a one-piece horn, are (1) that a one-piece horn would be "most unsuitable for transportation and shipping purposes"; (2) that a one-piece horn "would occupy a large amount of unnecessary space"; and (3) because, "if it should be desired to store the talking machine," the one-piece horn would prove clumsy and inconvenient. These disadvantages are said by counsel in his argument to be obvious and evident to the court. If so, as said by the court below they did not require expert or other testimony to point them out. Being obvious and self evident, the remedy employed of cutting the horn in two sections, was equally obvious and self evident, and to claim a patent monopoly therefor is a misuse of the patent laws which are to foster invention alone. The device of the patent in suit, to overcome the inconvenience of handling and packing a one-piece horn, no more involves invention than cutting a length of stove pipe into two sections and providing for their being united and fitted together, by slightly crimping the end of one section, that it may enter and be pressed into the end of the other.

Counsel for appellant dwells much upon the wide extent of the use made of this divided horn since the issuance of the patent in suit. It may be admitted that the commercial utility of a patented device is sometimes persuasive evidence of invention. But it is not conclusive. Courts are slow to sustain demurrers on the ground that the letters

patent are void upon their face, as showing no patentable invention. They, however, recognize the duty imposed upon them, where it is clear that the device of the patent in suit does lack patentable invention, to so declare, and to dispose of the case on demurrer, and thus put an end to useless and expensive litigation. In the present case, nothing could be gained by putting the parties to the expense and delay of taking testimony for a further and final hearing. No testimony, expert or otherwise, could possibly enlighten the court as to the character of the invention claimed. There is nothing obscure or difficult in the construction of the patented device, requiring such testimony. The prolixity of the specifications and the multiplication of the claims cannot conceal the want of patentable invention in the construction of the patent in suit.

The decree of the court below is therefore affirmed.