## ANDERSEN FRAME CORPORATION v. HURD LUMBER CO.

### No. 6211.

Circuit Court of Appeals, Seventh Circuit.

Dec. 14, 1937.

Harold Olsen, of Minneapolis, Minn., for appellant.

Frank A. Whiteley, of Minneapolis, Minn., and Fred W. Genrich, of Wausau, Wis., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal involves the validity of patent No. 1,595,958 issued to Fred C. Andersen, president of plaintiff company, August 10, 1926. The District Court decreed the patent and all its claims invalid for lack of invention and anticipation and dismissed plaintiff's complaint.

The patent relates to a window frame and more particularly to that part of the frame which in the trade is known as the "blind stop." This part of the frame gets its name from the fact that it was originally incorporated in window frames to serve as a stop for the usual blind or shutter. It also serves to form one side of the channel in which the outer sash slides. Prior to the alleged invention, window frames were built with two types of blind stops, narrow and wide. The former was a piece of material found between the jamb and the outer casing of the frame;

the latter overlapped the two jambs and formed one side of the pocket in which the weights performed. This constituted a double thickness between the jambs and the outer casing, and served not only as a reinforcement, but as a means of preventing dirt and air from entering a building through the window frame. The narrow blind stop was used more extensively than the wide as it was less expensive. Prior to the issuance of the patent in suit, the retailer was required to keep in stock the two types of window frames, one with the narrow and the other with the wide blind stop. The object of the patentee was to obviate the necessity for these two types of frames by providing for a frame with a blind stop which could be converted from a narrow to a wide blind stop, or vice versa as the circumstances of the trade might require. Of the eight claims in suit, claim 2 is admittedly typical and reads:

"A window frame comprising a sill and jambs mounted thereon, narrow blind stops secured to the outer edges of the jambs between them and the outside casing and permanently secured in·the window frame when it is built, and stock pieces of boards adapted to be inserted after the frame is built, and having edges to abut the outer edges of said narrow stops and form closed joints therewith and extending outwardly in the plane of the narrow stops to form wide blind stops."

In other words, the two parts of the narrow blind stop were to be joined by a filler in a tongue and groove fashion so as to constitute a closed joint and which then corresponded with the solid piece making up the wide blind stop then in use.

It is claimed by the defendant there is no novelty in the invention and that it is anticipated by prior patents and by the use and practice in the carpentry trade with reference to the subject-matter of the patent.

The District Court, among other things, found:

"That a tongue and groove connection between adjacent pieces of lumber is old and well known to the carpentry, woodworking and building industry. Plaintiff was not the first one to use the tongue and groove joint in carpentry. The inventor of plaintiff's alleged invention applied a well known mechanical expedient of carpentry to procure obvious results of joining together, by a tongue and groove joint, a

narrow blind stop with a filler board so as to widen the narrow stop. He substituted the tongue and groove joint for the smooth surfaced joint that had been formerly used in the widening of a narrow blind stop. There is no invention in making a blind stop in two parts and employing a tongue and groove joint to connect them.

"Everything in the plaintiff's patent involves the use of this well known mechanical expedient, and this application of a known method and device which produces obvious results does not involve or constitute invention."

We are in accord with this conclusion.

The prior art discloses numerous kinds of uses of a tongue and groove joint of various types for uniting extension pieces. For instance, the patent to Adams issued January 6, 1885, which has to do with windows, discloses a double tongued filler piece set between two frame members. While the filler piece in the Adams patent has a different location with reference to other parts of the frame, it seems to correspond with what plaintiff refers to as its "double tongued' filler piece." Our attention is called to a number of other patents which disclose various types and kinds of tongue and groove connections used in window frame construction, which we do not regard as necessary to discuss. It can be said, of course, that none of them disclose the exact location and use as found in plaintiff's device.

There was evidence, that prior to the time of the patent in suit, there was used in the carpentry trade a board to connect the two parts of the narrow blind stop, by toe-nailing the edge of the board to such parts so as to make a wide blind stop. It is insisted by plaintiff that the evidence of this prior use is not sufficient to establish such fact. The court below evidently concluded such prior use was established and we find no occasion to disagree therewith. Irrespective, however, of the weight to be attached to defendant's testimony in this respect, we are of the opinion that plaintiff's invention is void for want of novelty. It seems to us that patentee's disclosure consisted merely in suggesting the manner and method of converting a board into three parts with provision for attaching the parts by groove and tongue joints in such a way as to serve the same purpose as was served by the single board with the added advantage that the third piece or filler might be omitted when the same was not required. The method of joining two pieces of lumber in a tongue and groove fashion was old and well known and adapted to and used in various forms of carpentry work, including window frame construction. In our judgment the use of this knowledge in connection with the device before us was nothing more or different than might be expected from a person skilled and trained in the art of carpentry. In Victor Talking Machine Company v. Hawthorne & Sheble Mfg. Co., 3 Cir., 178 F. 455, at page 457, we find the following pertinent statement: "Obvious and self evident, the remedy employed of cutting the horn in two sections, was equally obvious and self evident, and to claim a patent monopoly therefor is a misuse of the patent laws which are to foster invention alone."

We are in agreement with the District Court in its finding that the patent is void for want of novelty and there is no occasion for us to discuss other questions raised on the appeal.

Decree affirmed.