### HIGGIN MFG. CO. v. MURDOCK.

#### (Circuit Court of Appeals, Sixth Circuit.   October 15, 1904.)

#### No. 1,286.

**1. PATENTS—INVENTION—SHELL FOR WHEEL HUBS.**

> The Higgin patent, No. 480,093, for a band-shell for wheel hubs, claims 1 and 2, which cover a shell having an annular groove for gripping the band and holding the shell in place, are void for want of utility in the device shown, and also for lack of patentable invention.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This is a bill to restrain infringement of patent No. 480,093, to Henry Higgin, for certain improvements in band-shells for wheel hubs. The claims of the patent are as follows:

"(1) As an article of manufacture, a shell for hub-bands, having an inturned flange adapted to take over the point of the hub-band, and provided with an annular depression, substantially as and for the purpose specified.

"(2) As an article of manufacture, a shell for hub-bands, adapted to engage with the point of the hub-band, provided with an annular depression, and having a corrugated or knurled portion between its outer end and the annular depression, substantially as and for the purpose specified.

"(3) The combination, with a hub-band having an annular groove, of a shell adapted to engage with the point of the band, and provided with an annular depression adapted to take into the groove on the band, substantially as and for the purpose specified.

"(4) The combination, with the hub-band, B, having groove, b', and bead-ring, b, of the shell-band, C, having flange, c, and depression, c', and adapted to abut against the bead-ring of the band, substantially as and for the purpose specified."

The object of the inventor was to provide a self-securing band-shell. Figures 1 and 2 of the patent are shown below:

### Fig. 1.

## Fig. 2.

In his specifications the inventor says of these figures:

"A represents a wheel-hub, and B a hub-band. C is a band-shell, preferably of annealed brass, adapted to take over and closely embrace the band. The shell has an inturned flange, c, adapted to take over and into the point of the band, and a groove or depression, c', adapted to take into a corresponding groove or depression, b', in the band." He describes his shell as secured to the band "by pressing it thereon until the depression in the shell takes into the depression in the band, the shell having sufficient spring to insure its closing tightly over the band." He adds: "The joint thus made locks the shell in position, and affords a simple and efficient means of securing it in position, without requiring the use of special tools or machinery." In respect to the grooves in the band necessary to secure this sort of locking, he says: "The bands may be manufactured with the grooves ready cut, or the grooves may be made in bands, not thus provided, by simple and inexpensive tools," etc. Only the first and second claims are in issue.

A demurrer for want of patentable novelty was sustained, and the bill dismissed. This decree was reversed by this court upon the ground that "the presumptions of validity from the issuing of the patent were not so clearly overcome by the application of common knowledge as to warrant us in refusing to allow the complainant to go to the issue on the proof." 40 C. C. A. 491, 100 Fed. 459. The case came on again to be heard upon pleadings and evidence, whereupon the court held the claims in issue invalid, and dismissed the bill.

Henry W. Faber, George B. Parkinson, and Parkinson & Richards, for appellants.

Jones & James (Rankin D. Jones and Francis B. James, of counsel), for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The third and fourth claims of the patent are limited to the use of the shell-band of the patent with hub-bands provided with a groove adapted to take in the corresponding depression in the shell-band when driven down, and the patentee mentions no other method of using his shell-band than in connection with hub-bands provided with a groove into which the annular groove of his shell-band might lock. The first and second claims cover the shell-band, with its annular groove, as an article of manufacture; the second claim including also a corrugated portion above the groove. Though it is quite possible that the patentee

only contemplated the use of his annular groove as a means of locking the shell in place when applied to a hub-band having a corresponding groove into which this annular rib might fit, yet if he has devised a means of holding such shell-bands in place upon hub-bands solely by reason of the gripping effect of such a rib, irrespective of an annular depression in the hub-band into which it might spring, he may maintain his first and second claims, which do not include as an element a hub-band having a depression adapted to receive such annular groove. This presents a question of utility first, and of patentable invention next. The learned trial judge thought, upon the evidence, that there was no important advantage in a band shell having an annular depression over one without it which closely fit the hub-band, and required some force to drive it down to its place. He also thought that if such an annular groove was a superior means of holding such shells in place, by reason of the gripping effect of such a rib, this means of holding did not involve patentable invention. We find no reason to differ with the learned court upon either ground.

A hub-band is an iron ferrule attached to the ends of a vehicle hub for the protection of the ends, and shielding the nut which holds the wheel on the axle. Shell-bands are thin metal cylinders, intended to be placed around the outer end of the hub-band for the purpose of ornamentation, and also to keep out moisture and prevent rusting of the iron parts. The use of such shell-bands is very old. Very many patents, some for the hub-band and shell, some for the band alone, and many for such metal shells, are in evidence. They differ mainly in the mode of holding the shell-band in place, and many ways of doing this are shown to have been in common use, or are taught by one or other of the numerous patents in evidence. In some cases the shell-band is secured by the ancient method of brazing or soldering; in others, by self-securing devices, such as spurs, spring clips, interlocking lugs, screw threads, bayonet locks, etc.; in still others, the shell is held in place by screws or rivets.

Mr. See, a learned expert, who testified for the complainant concerning the well-known methods of holding such ornamental shells in place, after referring to the methods above referred to, says that "shells could be pressed directly upon the iron hub-band." This, he says, was "the cheapest and nicest plan,  *  *  *  if it could be done satisfactorily." The objections he points out are that "the hub-bands could not be depended upon for accuracy of size, and the shells are required to fit with extreme niceness, and to be put on under heavy pressure." But these objections seem, on the evidence in this case, to apply with about equal force to shell-bands having an annular depression as a means of fastening. Exact uniformity in size or smoothness of surface of cast-iron hub-bands is no more to be expected when shell-bands are provided with annular grooves than when they are not. While it is true that hub-bands are generally of certain well-known standard sizes, yet the examples of such articles exhibited in this case show more or less irregularity in diameter, in taper, and in smoothness of surface, due to careless casting. Shell-bands are made, adapted to fit various standard sizes of hub-bands. If these shell-bands be exact cylinders, the place and extent of engagement when driven down over the hub-band necessarily depends upon the closeness of the fit of the

one upon the other. If the hub-band tapers too much, the contact between the lower portion of the shell and the hub-band may prevent any contact above at the point of the annular groove. It must fit closely enough to require some force to drive it on, and secure an engagement which will hold it fast in place. The metal, being ductile and having some resilience, will give slightly where the pressure is greatest; and this in itself furnishes a gripping or holding effect, which, according to the expert evidence, as well as the evidence of practical observers, is sufficient to hold such a shell in place, whether supplied with a gripping rib or not.

The defendant says he does not rely upon his annular groove as a means of holding at all, and that its presence in his device to an extent sufficient to constitute an annular groove is accidental, and that the very slight depression found in the shell-bands which he makes and puts upon the market is a mere ornament. To show that his annular groove does not grip, he has used certain exhibits which plainly indicate that in the particular instance there is no contact between his depressed groove and the hub-band; the shell-band being held tightly in place by close contact below the annular groove. But his exhibits, as well as the figures found in the brief, alike show that the taper in the hub-shell used was so great that a shell-band fairly close-fitting at the top was so tight when forced down to the shoulder as to prevent any possible contact between the depressed rib above and the surface of the hub-band. But given a case where the point of contact is the depressed groove, and there can be no doubt of the gripping effect of such a rib. To secure engagement by means of this gripping rib plainly requires a degree of adaptation of the shell-band to the particular hub-band which we are persuaded is not often found. Neither is it made out to our satisfaction that the gripping effect resulting from the contact of the lower wall of such a shell, though perfectly smooth, with the surface of an ordinary cast-iron hub-band, painted or not, is not for all practical purposes quite as efficient as if the engagement was only between a depressed groove and the surface of such a hub-band. In both cases care in the amount of force applied is essential to prevent buckling or cracking, and in both cases the tightness of the fit necessary to bring into play the gripping or holding effect will be such as to require some pressure to drive the shell into place.

But if we err in thinking complainant's annular groove to have no patentable utility, irrespective of the character of the hub-band upon which it is used, we cannot find reason for saying that the court below erred in holding that the use of such an annular groove as the sole means of fastening such shell-band in place involved invention. It may be conceded that the use of such a gripping rib as a means for attaching shell-bands prior to Higgin is not shown. But it was an old and well-known means of attachment, and required no adaptation or special skill to use it for this particular purpose. The same principle is exhibited in the lead pencil with a rubber tip enclosed within a thin metal cylinder, the latter having several annular depressions which grip the rubber and hold it in place. The common iron ferrule for canes, umbrellas, and jointed fishing rods afford other examples of the holding effect of such an annular groove.

Decree affirmed.