NEW YORK BELTING & PACKING CO., Limited, et al. v. SIERER et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

No. 54.

PATENTS—INVENTION—TILE FLOORS AND WALLS.

The Furness patent No. 527,961 for a tile floor or wall composed of tiles of yielding material with interlocking joints is void for lack of invention in view of the prior art which showed interlocking wall tiles of non-yielding material, and floor tiles of rubber not interlocking.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 149 Fed. 756.

Hubert Howson (Charles Howson and J. C. Fraley, of counsel), for appellants.

R. H. Parkinson (J. Burnett Nash and Bayard Christy, of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is a suit in equity to restrain the alleged infringement of letters patent No. 527,961, issued October 23, 1894, to Frank Furness (assignor of one-third to David H. Watts) for "Improvements in Tile Floors, Walls, etc." The principal defense is want of invention in view of the prior art.

The patentee states that the object of the invention "is to prevent tile floors from cracking or opening at the joints because of tension or compression strains." This object is accomplished by the use of tiles of yielding material—preferably rubber—interlocked together. Various forms of tiles are described and illustrated in the patent. Some interlock directly; others, indirectly by means of key tiles. The preferable form of lock is the dovetail. While the specifications speak of properly cementing the tiles, the proof shows that this is only necessary when a water-tight floor is desired. The great advantage—according to the patent—of using a rubber tile instead of ordinary strip rubber is that ornamental designs may be obtained from different colored tiles, and the floor can be readily repaired in case a tile is injured. This is the claim of the patent:

"A tiled floor or wall composed of a series of tiles of yielding material, said tiles having interlocking tongues, and being removable, substantially as described."

The patent states that the tiling is especially adapted to cover the floors and decks of vessels, and the testimony shows that tiles manufactured under it have been extensively used for such purpose, particularly on ferryboats. The constant strain upon the floors of moving vessels causes coverings of nonyielding tiles—vitrified, earthen, and similar tiles—to crack and open at the joints. The complainants' tiles stand the strain without separating. They are also nonslippery, noiseless, waterproof, and sanitary when cemented, and attractive in appearance. These advantages have led to their use in many office buildings, hotels, and other indoor places where there is heavy travel. They are expensive, but their value is indisputable. A large part of the success of the complainants' tiles is undoubtedly due to their thickness, and the secret composition of which they are made. They are so thick that if laid upon floors not exposed to strain, they would probably remain in place without the interlocking device. Certainly they would do so if laid in cement. The noiseless, nonslippery, and waterproof qualities result from the material from which the tiles are made. Still, the interlocking device is unquestionably a useful improvement. It often serves to hold the tiles together without cement and prevents their "kicking up." More than all, it makes a practically homogeneous floor covering capable of standing strains without separating at the joints. But the fact that the Furness patent shows a new and useful improvement does not, in itself, disclose invention. As held by the Supreme Court in Hollister v. Benedict Mfg. Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901, novelty and increased utility in an improvement do not necessarily make it an invention. Whether, therefore, the patent shows invention, i. e., whether the improvement is the result of an original conception, is the important question. This question must be investigated in view of the state of the prior art. But in

considering the prior art, we need go no further back in the examination of alleged anticipating patents, than to the Harland English patent and the Watts design patent, which shortly preceded the Furness patent. If these do not anticipate, no earlier patent does. A very comprehensive examination of the earlier patents may, however, be found in the able opinion of the judge at circuit.

The Harland patent was granted in 1889 for elastic tiles of vulcanized india rubber. They were said in the specification to possess many of the advantages now found to exist in the complainants' tiling, being noiseless, impervious to water, and affording an excellent foothold when used upon the decks of ships. The tiles were to be laid in cement. The proof shows that Furness first obtained his idea of an elastic floor covering from tiles manufactured under this Harland patent and laid in the cabins of the White Star steamships. They were of various shapes, but were not interlocking, and were thinner than the tiles manufactured by the complainants. The thickness of the tiles is, however, not limited by the Harland patent, and floor coverings of the complainants' tiles and of the Harland tiles, properly cemented, of equal thickness, would be very similar. Probably the only difference would be that the complainants' covering would be of somewhat more homogeneous character, and better able to stand strains without separating. Moreover, the Harland tiles, regardless of thickness, would not hold their places so well as the complainants' tiles if laid without cement.

The Watts patent is a design patent. It illustrates and describes an interlocking tile of precisely the form of one of the figures in the Furness patent. The tiles manufactured under this patent were of pottery ware, and ware used for wainscoting. Watts, the inventor, is the assignee of one-third of the present patent. Furness had seen this Watts pottery tile before he applied for his patent. It is apparent, therefore, that what Furness did—and all that he did—was to make the Harland yielding but not interlocking tile in the form of the Watts unyielding but interlocking tile. As the complainants' expert said of the proof of the prior art:

"All these things practically resolve themselves into two, viz.: (1) They show that yielding tiles having no interlocking means were old; and (2) that dovetailed interlocking projections and recesses were old with unyielding tiles."

Did it involve an original conception to bring these two forms of tiles together? This question—the vital one in the case—we may subdivide into reciprocal inquiries in order to obtain two points of view: (1) Was it invention to apply the old interlocking device to yielding tiles? (2) Was it invention to change the material of the old interlocking tile and make it yielding?

Tenons and mortises have been used since early times to hold firmly together sections of wood and other materials. The dovetailed lock is a common expedient. Any intelligent artisan having before him the mere problem of uniting hard rubber tiles would be likely to adopt it, especially if he knew that it was used to unite pottery tiles. In any such case there would simply be a selection of means and not invention.

In Aron v. Manhattan R. Co., 132 U. S. 90, 10 Sup. Ct. 24, 33 L. Ed. 272, it appeared that the patentee had adapted well-known devices to a special purpose, with very considerable resultant advantage. But the Supreme Court held that this involved only the exercise of ordinary mechanical skill, and quoted, with approval, this language of Judge Wallace at circuit (Id., 26 Fed. 314):

"It seems impossible to doubt that any competent mechanic familiar with devices well known in the state of the art could have done this readily and successfully upon the mere suggestion of the purpose which it was desirable to effect."

In Higgin Mfg. Co. v. Murdock, 132 Fed. 810, 65 C. C. A. 466, the Circuit Court of Appeals of the Sixth Circuit said, in holding a patent void for want of invention:

"It may be conceded that the use of such a gripping rib as a means for attaching shell bands prior to Higgin is not shown. But it was an old and well-known means of attachment, and required no adaptation or special skill to use it for this particular purpose. The same principle is exhibited in the lead pencil with a rubber tip enclosed within a thin metal cylinder, the latter having several annular depressions which grip the rubber and hold it in place. The common iron ferrule for canes, umbrellas, and jointed fishing rods afford other examples of the holding effect of such an annular groove."

The complainants, however, seek to avoid the effect of these decisions and of the principles underlying them, by claiming that the present patent involves a new function for the interlocking device. The patentee testified:

"I was requiring of the interlocking joint an entirely new function and use, as far as my knowledge went of any joint in material before this time, and that is owing to the elasticity and flexibility of the rubber or other material which I proposed to interlock, I should require a joint that would more or less lend itself to the elasticity and flexibility of the material, so that after it was relieved of all strains it would resume the same position that it was in before the strains occurred, and remain a true and perfect joint."

Still, the real function of the interlocking device in the patented article is to prevent the tiles from pulling apart under strain and opening the joints between them. That was the stated object of the patent. The quality of elasticity arises not from the joint, but from the material the tiles are made of. This use by the patentee of the interlocking device to prevent tiles from opening at the joints was not a new use. The ordinary function of such joints is to prevent the improper separation of united parts. And this function is the same, regardless of the material. Some material may be too flimsy to interlock at all. Some may be too brittle to stand interlocking without breaking. Where, however, the interlock is used, its function is to keep the parts from separating. The use of the interlocking joints with yielding tiles seems clearly to be for the same purpose and to have the same effect as in the case of nonyielding tiles. Whatever difference there may be might be expected from the difference in material. The new use required by the patentee of the interlocking joint produced no novel or unexpected results. The testimony wholly fails to show a new function, within the rule stated by this court in General Electric Co. v. Yost Electric Mfg. Co., 139 Fed. 568, 71 C. C. A. 552:

"But it is thought that the assertion of a new function or effect should only be sustained upon proof of novel or unexpected properties or uses capable of producing novel results."

Considering the case along these lines, therefore, we necessarily answer our first inquiry that there was no invention in applying the old interlocking device to yielding tiles. This disposes of the case. We may, however, test the correctness of our conclusions by taking the other view point, and examining our second and reciprocal inquiry—was it invention to change the materials of the old interlocking tiles?

Rigid tiles with the interlocking device had been in use before this patent was applied for. At that time, also, patentees in various patents had pointed out the advantages arising from substituting in tiles rubber and other elastic compounds in place of the nonyielding materials. The ordinary incident of elastic compounds is the capacity for expansion and compression. Employing this material in any known form of tile—interlocking or other form—involved no essentially novel use. The result was a marked improvement, but there was no original conception. "But the substitution of one material for another, which does not involve change of method nor develop novelty of use, even though it may result in a superior article, is not necessarily a patentable invention." Florsheim v. Schilling, 137 U. S. 64, 76, 11 Sup. Ct. 20, 24, 34 L. Ed. 574. The two Supreme Court cases following illustrate the application of the underlying principles in analogous cases:

In Phillips v. Detroit, 111 U. S. 604, 607, 4 Sup. Ct. 580, 28 L. Ed. 532, the patent was for a wooden pavement consisting of wooden blocks set with their fibers vertical in a bed of gravel or sand, the spaces between the blocks being filled with the same materials. The court held the patent void for want of patentable invention, saying:

"The improvement described in the appellant's patent consists, therefore, in simply taking a material well known and long used in the making of pavements, to wit, wooden blocks set vertically, and with them constructing a pavement in a method well known and long used. It is plain, therefore, that the improvement described in the patent was within the mental reach of any one skilled in the art to which the patent relates, and did not require invention to devise it, but only the use of ordinary judgment and mechanical skill. It involves merely the skill of the workman, and not the genius of the inventor."

Brown v. District of Columbia, 130 U. S. 87, 99, 9 Sup. Ct. 437, 32 L. Ed. 863, was another wooden pavement case. There the claim covered wooden blocks having a single plain surface and inclined sides, so that when laid on their larger ends, wedge spaced grooves would be formed to be filled with cement or similar material. A prior patent had shown stone blocks similarly cut. But it was claimed that the filling would adhere better to the wooden blocks than to the stone ones, because they were softer and would indent. They were also said to be superior in other ways. But the court, in holding that there was no invention, said:

"The blocks of the Lindsay patent are of the same shape as those of Cowing, but are of stone, while the latter are of wood, but this was nothing more than

the substitution of one material for another without involving a new mode of construction, or developing anything substantially new in the resulting pavement."

In considering the application of the principles stated in these decisions to the present case, the line of authorities holding that there may be invention in adapting an old device to a nonanalogous use must not be lost sight of. Potts v. Creager, 155 U. S. 605, 15 Sup. Ct. 194, 39 L. Ed. 275, is probably the leading case in this line. In that case the patent was for a cylinder for pulverizing clay, having upon its periphery longitudinal steel strips with sharp projecting edges called "scrapers." When the clay was forced into the machine between the cylinder and the abutment, it was pulverized by the "scrapers." The nearest anticipating device was a wood polishing machine having a cylinder similar to the clay machine except that the projecting strips were of glass instead of steel. The machine was designed to polish boards which were to be pressed against the cylinder by a roller. The Supreme Court held that this cylinder did not anticipate the patent. But it did so because the two machines were not to be used for analogous purposes. The court said (page 604 of 155 U. S., page 197 of 15 Sup. Ct. [39 L. Ed. 275]).

"Had this machine been used for an analogous purpose, it would evidently have been an anticipation of the Potts cylinder, since the substitution of steel for glass strips would not, in itself, have involved invention."

But this is not a case where the anticipating articles are in different industries. The Harland tiles were used for tiled floors. The Watts tiles were used for tiled walls. The patent in suit claims a tiled floor and a tiled wall.

It follows, therefore, that from whatever point of view we examine the present case no patentable invention is to be found. There was no original conception in applying the old interlocking device to yielding tiles. Conversely, there was no invention in changing the material of the old interlocking tiles.

The decree of the Circuit Court is affirmed, with costs.