### BARRY et al. v. HARPOON CASTOR MFG. CO.

(District Court, S. D. New York. December 12, 1912.)

PATENTS (§ 328*)—INVENTION—FURNITURE TIP.

    The Alleyn patent, No. 995,758, for a furniture tip consisting of a flattened spheroid of smooth sheet metal for attachment to the bottom of the legs of chairs or other furniture by means of integral prongs on the rim which are driven into the wood, in view of prior structures in the same and analogous arts, which show round-headed nails and rim-pronged nails and spots used as supporting tips for leather bags, etc., is void for lack of patentable invention.

In Equity. Suit by Charles D. Barry and others against the Harpoon Castor Manufacturing Company for infringement of letters patent No. 995,758, for a furniture tip, issued to Henry M. Alleyn June 20, 1911. On final hearing. Decree for defendant.

Beard & Paret and Frederic W. & Alfred E. Hinrichs, all of New York City, for complainants.

Henry N. Paul, Jr., and Joseph C. Fraley, both of Philadelphia, Pa., for defendant.

MAYER, District Judge. Complainants' articles are the furniture slides or castors known as "Domes of Silence" (sometimes called "Invisible Castors"). They have become very popular and successful commercially, as have the "Harpoon" castors of the defendant. If the patent is valid, defendant's devices clearly infringe, and it is refreshing that in this case the defendant does not seek to differentiate, by attentuated distinction, its article from that of complainant, nor to cite a multitude of prior art references, when upon the important and controlling references the case must stand or fall.

The record at first impression presents two basic questions: (1) Patentability in view of the prior art; and (2) patentability in view of the proceedings before the United States Patent Office.

It is contended on the second (supra) proposition that, in any event, the proceedings in the Patent Office rendered the patent void. It is unnecessary to determine this question, because it seems to me that the case is disposed of by the prior art.

As introductory, it may be observed that the court is not inappreciative of the proposition that simplicity or slight change does not necessarily negative invention. On the other hand, a clever improvement by the skilled artisan may produce a highly successful device, and yet

---

not rise to the dignity of invention and thereby close the door to competition.

A device substantially the same as that under consideration was first patented in Great Britain by one Alleyn, described by himself, and later, somewhat picturesquely by counsel for complainant as a "Ceylon Planter." That is the difficulty. If, instead of being a Ceylon planter, he had been a furniture man, he might not have been so sure of inventive genius. Later, on December 30, 1908, Alleyn filed his application in the United States Patent Office, and the patent was granted June 20, 1911.

Stripped of expert and technical phraseology, the invention claimed consists of three features: (1) A smooth, readily sliding device, practically invisible, whereby a chair can be moved about with a minimum of friction; (2) a physical form which will allow the chair to rest in proper position on a floor whether carpeted or not; (3) a simplicity of construction and material (necessarily hard), which will enable any one to hammer the device, without skill, to the bottom of a chair leg without denting.

The sole claim is:

"In an article of manufacture, a tip for supporting wooden chairs and the like, adapted for contact with a support therefor, consisting of a continuously curved convex portion of smooth sheet metal having an upturned rim continuously connected to said convex portion around its perimeter, and prongs of said sheet metal integral with said rim, projecting substantially in the plane thereof at the point of attachment, and adapted to be driven by the blows of a hammer into the wood of the article to be supported, said convex portion, rim, and prongs, having a resisting power to the blows of said hammer sufficient to substantially prevent the flattening or breaking thereof, whereby said tips may be attached without malformation or fracture."

In the British patent of Alleyn, the patentee here (filed April 2, 1908, complete specification October 2, 1908, and accepted March 11, 1909), it is apparent that what he believed he had invented was a nail in the shape of a flattened spheroid which would be superior to the old-fashioned castors because the chair would slide more readily and the disc be more or less invisible.

Among the fifteen figures, illustrative of his different forms, will be found several which show that the disc has a central shank like any ordinary round-headed nail. Particularly is this evident in Fig. 1, which closely resembles the Thonet chair tip hereinafter to be referred to.

The Fig. 5 shows a tip of similar shape, having rim prongs and representing substantially the "Domes of Silence."

The attachment means figured in the British patent are regarded as equivalent desirable methods of attachment, and no emphasis is laid on the rim-pronged shape which is now the subject of controversy. The disc or castor is necessarily of metal, but no mention is made of the kind of metal to be used. Pronged round-headed nails of all shapes and sizes are old and known to many arts.

The prior or analogous arts may be considered under three heads: (1) Round-headed nails used for chair tips; (2) rim-pronged nails

and spots used for various purposes; (3) rim-pronged "spots" used as supporting tips for leather bags.

1. Round-headed nails used for chair tips:

(a) Gebruder Thonet of Vienna are well-known manufacturers of bent wood furniture with a large branch house in New York. The published illustrated catalogue of this firm, dated September, 1905 (satisfactorily proved), shows in German the following description (translated):

"Carpet saver (parquet saver). On demand, all seating furniture can be made with sliding nails attached to the feet. Advance price 30 Heller per furniture piece."

The sales of this article were substantial.

The only important difference between the Thonet and the Domes of Silence is the method of attachment to the chair; the Thonet involving attachment by a central shank in a bored hole, and the "Domes" attachment by rim prongs hammered directly into the wood.

In the English patent, Fig. 1 would seem to closely resemble the Thonet.

(b) The Berbecker & Rowland chair tips show a slightly more rounded head than the Thonet with a slightly thicker spindle. The evidence as to consistent manufacture and sale since 1896 in this country is convincing. There does not seem to be any substantial difference between these tips and the "Domes," except as to method of attachment; the former by central shank and the latter by rim prongs.

2. Rim-pronged nails and spots used for various purposes:

(a) British Baker patent. The patent is entitled "Improvements in nails for coffins, articles of furniture and other uses," and discloses as its purpose the prevention of detachment of the heads of nails from the shanks.

The Baker nail is practically a hemisphere as distinguished from the flattened spheroid of the Domes of Silence. Complainants' expert emphasizes the V-shaped ears of the nail referred to in the Baker specification as indicating that these ears when driven would expand outward, although some of the figures of the patent show the prongs parallel with the rim of the nail, and figure 3 shows that the shape of the ears when driven into the wood is not a V-shape. In affixing the nail to an article of furniture, Baker states that the head or shell is struck by a hammer "in the usual way," and in making the nail he takes "a circular blank of sheet metal cut out at a press; the said blank being provided at its edge with 2, 3, or more V-shaped ears."

We thus have clearly the suggestion of integral prongs and a hammering presumably without denting. It may be that the Baker patent contemplated an ornamental use, although the specification reads "having an ornamental or *other* head." If we stopped here there might be something to say about the inventive characteristic of complainants' Domes, but the March design patent for an ornamental rivet was granted as far back as November 22, 1898, and shows substantially the same construction as the Domes. It is true that the Domes have three prongs, but there is nothing either in the claim or the specifica-

tion to indicate that more than two prongs are necessary in the manufacture of a device which follows the Alleyn patent.

In the specification, reference is made to "a plurality of integral pointed prongs" and in the claim to "prongs." The March United States Patent (No. 29,699) is owned by Standard Rivet Company, apparently a substantial concern which has been manufacturing "spots" for many years under this patent. All of these "spots" consist of a hollow flattened spheroid with rim prongs, and all sizes are made in two shapes, one more rounded and the other slightly flattened, known, respectively, as the "crown heads" and the "flat heads," the latter of which closely resemble, if indeed they do not correspond to, the shape and configuration shown in the drawing of the Alleyn patent and to the shape of the Domes manufactured thereunder. These spots are used on dog collars, saddles, and, as the catalogue of the Standard Rivet Company states, "other thick work."

3. Rim-pronged "spots" used as supporting tips for leather bags:

But the most important use of the Standard Company "spots," so far as important here, is in connection with hand bags or satchels. Five thousand of these spots were sold in July, 1908, to a large trunk and bag house in Rochester, N. Y., and there is in evidence a bag to which these spots are attached of the style made and sold by this Rochester house throughout the year 1908. A witness for the defense produced an old hand bag purchased in Boston in the year 1904, which likewise has spots or rivets attached to the bottom of it.

With the date thus fixed of the manufacture and sale of these bags with "spot" attachments, it is apparent, and, indeed, well known, that these spots on the bottom of a hand bag are attached in order to enable the hand bag to be slid easily, and necessarily to carry some weight when, for instance, slid along the package room of a railroad station or a hotel. With this bag before him a skilled artisan in this art could, I think, see without much difficulty that the same device could be utilized for the same general purpose when applied to hard wood, provided the material out of which the device was made was sufficiently strong. He might then conclude (if it were an issuable fact in this case), as would likewise be obvious, that three prongs would be better than two.

But in any event, with these Standard Rivet Company's spots before him, the Baker patent, the Thonet, and the Berbecker & Rowland tips, it would not take invention to realize that a strong hard metal would accomplish what is accomplished by complainants' device. N. Y. Belting & Packing Co., Lim., v. Sierer, 158 Fed. 819, 86 C. C. A. 79.

The proceedings in the Patent Office show that what really turned the scale in favor of the issuance of the patent was the strength of the material, although the final decision is placed on other grounds, clearly contradictory of the previous decisions of the examiners.

Had there been before the Patent Office a March spot made of German silver, I am inclined to think that the patent would not have been issued.

On the argument I asked that the Standard Rivet Company's spot (No. 37) be specially made of hardened steel. This has been done,

201 F.—44

and while, on experiment, it appears that "spots" made of softer metal are dented in the driving, it equally appears that "spots" made of this hardened steel are driven by an inexperienced hand as effectively as the complainants' device. In the dilemma in which Alleyn found himself in respect of material, he concluded that he must leave its selection to the artisan, and so in his specification he stated "the means by which these tips may be rendered sufficiently hard to prevent them from being malformed in use is well known to those skilled in the art"; and in his claim he referred to "smooth sheet metal," which, of course, again left the selection to the artisan. The rest of the claim, so far as it deals with hammering the device, must be regarded as either an evasion or as an obvious result of choosing the right material.

Complainants urge with great emphasis that the success of their article should determine the question of invention.

In a doubtful case success and utility often resolve the doubt. This case cannot be said to be doubtful; but, if it should be so regarded, it is one of the cases where it may well be urged that considerations in addition to the efficiency of the device have contributed to its success, such as the ingenious name under which sold and the more extended use in connection with carpets, rugs, and parquet or other uncarpeted floors of various kinds of devices seeking to accomplish the same result.

Finally, it is urged that a new use was found in employing this article for the legs of furniture as contrasted with its previous application to the bottom of leather bags and satchels. On this branch, the case comes well within such authorities as Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222.

For the reasons outlined, the bill will be dismissed; but, although the defendant has the right to manufacture and sell its device, its method of starting its business was such that I think costs should not be awarded to it.