### JENNISON-WRIGHT CO. v. HEMPY.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1920.)

No. 3319.

1. **Patents ☞168(2)—Acquiescence in rejection of claim immaterial, unless claim issued includes defendant's device.**

Under usual conditions, acquiescence in the rejection of a claim by the Patent Office is of no importance, unless the court is called on to determine whether the claim as issued has a scope sufficiently broad to include defendant's somewhat variant device.

2. **Patents ☞328—Claim for wooden pavement void for want of invention.**

The Jennison patent, No. 1,061,296, for a wooden pavement, consisting of wood paving blocks with a spacing projection extending in the direction of the grain along the vertical side of the block, held void for want of invention; such spacing projection having been used on clay and brick paving blocks, and the only specific advantages of the patentee's pavement being those inherent in the material selected.

3. **Patents ☞21—Change of material not patentable.**

A mere change of material is not patentable.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit by the Jennison-Wright Company against George L. Hempy. From a decree dismissing the bill, plaintiff appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. M. Allen, of Cincinnati, Ohio, and Ralph Emery, of Toledo, Ohio, for appellant.

Edward Rector, of Chicago, Ill., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. The appellant, as owner of the patent in suit, appeals from a decree dismissing an infringement bill on patent No. 1,061,296, granted to Jennison May 13, 1913, for a wooden pavement. The second claim sufficiently indicates the subject-matter involved. It is:

"The combination with a wood paving block, provided with an integral wood projection extending in the direction of the grain of the block along a vertical side of the block, of a second block spaced from the first by the said projection."

If, as is claimed, the defendant uses the identical construction, the validity of the patent is the only thing involved. A wooden block pavement should be laid with the end of the grain at the top, and properly spaced to permit filling the interstices; each block should also be capable of expansion without distorting or "buckling" the pavement. Plaintiff's "integral wood projection" or rib, running with the grain, serves as an index, facilitating laying the block with the grain vertical, and also serves as a spacer in the laying operation. It is also said that this rib will crush, with relative ease, in case of block expansion, thereby permitting adjacent blocks to fill the intervening space, and that, in spite of such crushing, the rib and the adjacent portions of the block will have sufficient elasticity to resume in part their original shape when contraction later occurs. It is denied that these elements of usefulness exist in more than negligible form; but, for present purposes, we assume that they carry substantial utility.

[1] In his original application, Jennison asked for a claim on a paving block with a "crushable spacer." This being rejected upon reference to a brick of similar form with a similar rib or spacer, which the Patent Office considered crushable, he amended so as to claim a paving block with a "fibrous, crushable spacer." This was again rejected, both because he was attempting to describe his invention by adjectives, and because of the existence of wooden block pavements having a horizontal wooden strip interposed as a spacer between adjacent rows of blocks. He then formulated his claim as it was issued. It is evident that the specific form of spacer finally described in the issued claim is crushable in the sense in which Jennison uses the word, and is fibrous, and the case is therefore one where, having made a broad claim and then having accepted a narrower one, the patentee would not be permitted to expand his claim as issued, so as to have the broader scope which he once abandoned; but, since we assume that the defendant uses the exact and specific form to which the patentee limited himself, there is no occasion to resort to the rules of estoppel by Patent Office proceedings, or to place any dependence upon those rules in reaching a conclusion. Under all usual conditions, acquiescence in the rejection of a claim is of no importance, unless the

court is called upon to determine whether the claim, as issued, has a scope sufficiently broad to include defendant's somewhat variant device. Baltzley v. Spengler Co. (C. C. A. 2) 262 Fed. 423, 426, —— C. C. A. ——.

[2, 3] However, we do not find this Patent Office history wholly irrelevant. It emphasizes the fact that whatever special utility is attributable to the precise form and location of the spacing rib, as described in the claim and as compared with former known structures, is due to the inherent qualities of wood as compared with baked clay. There were earlier clay or brick paving blocks of substantially the same form. Wooden paving blocks were in common use; it was known that they should be set with the grain vertical; an integral spacing rib would naturally be made with the grain parallel with the grain of the block—indeed, it might be difficult to make it in any other way; and this made the rib vertical, just as were the spacing ribs of the clay block. Because the wooden block and the rib were fibrous, with corresponding grain, the rib would crush or sink into the block with comparative ease, and there would be a measure of elasticity tending to return the parts to their original shape. These things would not be true of the brick of similar shape; but these results come from the known qualities of wood. All the specific advantages which the patentee, at the end of his course in the Patent Office, found himself relying upon were merely those which were inherent in the selected material itself; and those qualities of wood were familiar to all. We think the case is a plain one for the application of the rule that a mere change of materials is not patentable; because, after all is said, it remains clear that Jennison did nothing else. There is rather close analogy to the facts involved in Brown v. District of Columbia, 130 U. S. 87, 9 Sup. Ct. 437, 32 L. Ed. 863, and in Pressed Steel Co. v. Brownell & Co. (C. C. A. 6) 123 Fed. 86, 59 C. C. A. 216; and the situation is practically parallel to that discussed by the Second Circuit Court of Appeals in N. Y. Belting & Packing Co. v. Sierer, 158 Fed. 819, 86 C. C. A. 79, where rubber tiles of smooth, rectangular form had been well known (as wooden paving blocks of that form had been), and tongue and groove tiles of a pottery material were also known, and the patentee made a rubber tile in the tongue and groove form of the old pottery material. This was held not to involve invention.

Appellant relies especially upon Frost Co. v. Cohn (C. C. A. 2) 119 Fed. 505, 56 C. C. A. 185. This may be easily distinguished. Clamping studs of the shape and for the purpose shown had been made of metal, and yet it was held to be invention to make one of the same shape out of rubber. If it had been old to make these studs out of rubber in other forms and shapes, the patent, clearly, would not have been sustained; but what impressed the court as deserving was the thought that rubber could be used at all in that association and for that purpose. To make the present case parallel, it would have to be supposed that wooden paving blocks had never been used at all, and that would put a very different aspect on the matter.

The decree is affirmed.