**ALFRED HALE RUBBER CO. v. MORSE & BURT CO. et al.**

(District Court, E. D. New York. February 5, 1926.)

1. **Patents ⟨⟩328—1,479,497, for method of applying rubber soles and heels to shoes, held invalid for lack of invention and anticipation, but, if valid, not infringed.**

Cutler patent, No. 1,479,497, for method of applying rubber soles and heels to shoes, *held*

invalid for lack of invention and anticipation, but, if valid, not infringed.

2. **Patents ⟨⟩91(3)—Patentee must establish claim to use antedating a prior use, by evidence of at least equal quality to that establishing prior use.**

Patentee must establish claim to use antedating a prior use, by evidence of at least equal quality to that establishing prior use.

3. **Patents ⟨⟩112(3)—Presumption of validity of issued patent may be rebutted by proof.**

Presumption of validity of issued patent may be rebutted by proof.

4. **Patents ⟨⟩26(2)—Process consisting of old steps may be patentable, if it produces new and useful results.**

Process constituting of old steps may be patentable, if it produces new and useful results.

5. **Patents ⟨⟩36—Evidence of commercial success held insufficient to sustain validity of doubtful patent.**

Evidence *held* not to show that crepe rubber soles, prepared under plaintiff's patent, supplanted others so as to sustain validity of doubtful patent by proof of its commercial success.

In Equity. Suit by the Alfred Hale Rubber Company against the Morse & Burt Company and another. Decree for defendants.

Redding, Greeley, O'Shea & Campbell, of New York City (William A. Redding and Ambrose L. O'Shea, both of New York City, of counsel), for plaintiff.

Gifford & Scull, of New York City (Livingston Gifford and George F. Scull, both of New York City, of counsel), for defendants.

CAMPBELL, District Judge. Plaintiff seeks in this action to restrain the alleged infringement by the defendants of patent No. 1,479,497, issued by the United States Patent Office to David A. Cutler, dated January 1, 1924, and to recover damages. The defendants have interposed the answer of invalidity and noninfringement.

No evidence of any sort has been presented that in any way connects the defendant Cantilever Shoe Shop, Inc., with the alleged infringement; therefore the complaint should be dismissed as to them, with costs.

[1] The patent in suit is for the process of attaching rubber soles to boots and shoes. The invention is said by the patentee in his specification to primarily consist in his "method of applying and securing the outer rubber or yielding sole or combined sole and heel to the shoe, independently of stitching the same, and in a manner to conceal, protect, and cover the stitching, if any, utilized

in the construction of the shoe to which the elastic outsole is applied."

In carrying out his invention, the patentee says in his specification that he makes the shoe—either welt or McKay—in the usual manner, but that he secures, during the process of manufacture, "a thin rubber layer or intermediate sole to the shoe insole or to the attached welt. This may be by the usual welt stitching or McKay stitching. Preferably also I form this thin rubber sole of unvulcanized rubber, or a suitable rubber compound. I then prepare the main outer sole, also of yielding material, such as unvulcanized rubber or vulcanizable rubber compound of suitable size, thickness, and shape to complete the outsole of the shoe. I then coat the contacting surfaces or one of the surfaces and apply the outer sole to the previously attached rubber sole, preferably a thin strip or intermediate sole. These contacting surfaces are coated with a suitable solvent, which will act on the rubber itself to partially dissolve the same and permit the two soles by slight pressure and in a short space of time to become thoroughly and substantially integrally united."

The patentee also says, in his specification, "that, where unvulcanized rubber is employed as at the outer sole and preferably also as the intermediate sole, a coating of benzol or the like will sufficiently dissolve the contacting and coacting faces of the two soles as to practically and solidly unify the rubber in both. * * *"

The patent in suit is not limited to crepe rubber, but the midsole is described as "preferably" made of "unvulcanized rubber" or a suitable rubber compound, and the main or outer sole the patentee says may be "unvulcanized rubber" or "vulcanizable rubber compound."

A rubber compound is a mechanical mixture of crude rubber, with other materials such as sulphur or pigments. This is quite different from crepe rubber, and a vulcanizable rubber compound is a compounded rubber in condition to be vulcanized, and this surely does not describe crepe rubber.

Crepe rubber is mentioned but once in the patent, and that is in the specification where it is said, "The outsole, also of suitable rubber, preferably Colombo or other raw, unvulcanized rubber such as crepe, or latex. * * *"

The patent has but one claim, which reads as follows:

"The improved process of attaching to footwear two layers of unvulcanized rubber unified into a single outsole, which consists in providing two solelike layers, each of less thickness than that of the combined outsole, first applying one layer to the footwear and securing the same thereto by mechanical fastenings, then partially dissolving either or both of the contacting surfaces of the layers to be united, and then applying and holding the outer layer to the surface of the mechanically attached layer, until the partially dissolved surfaces become unified, whereby a complete solidified outersole of unvulcanized rubber is produced, having the mechanical attachments concealed therein."

The shoe made and sold by the defendant Morse & Burt Company (Plaintiff's Exhibit 1) is stipulated to have been made as follows: "By first mechanically fastening a layer of 'crepe' rubber to the shoe, then coating the outer surface of said layer with benzol and the surface of another layer with benzol, then placing the two coated surfaces together, and holding them in position until the two layers adhered to each other."

The rubber used by the defendant in its shoe in evidence is unvulcanized rubber, and benzol is a solvent, therefore, if the patent in suit is valid, no further consideration will be required of the question of infringement.

The defendant in its brief relies on the defense of invalidity. The defendant offered in evidence the following patents of the prior art:

British patent No. 1987, A. D. 1858, issued to Warne, for improvements in the construction of elastic pavements, etc., discloses that the use of a solvent to make two pieces of unvulcanized rubber adhere together is old.

United States patent No. 34,682, issued to Godfrey, for improvement in india rubber boots and shoes, dated March 18, 1862, discloses double india rubber soles, each vulcanized, which are so formed that they will adhere to each other when cement is applied without being held pressed together.

United States patent No. 616,470, issued to Kennedy, for rubber soled leather shoe, dated December 27, 1898, discloses a leather upper provided with the usual insole. Secured to the upper by mechanical means is a layer formed of leather, which extends out beyond the edge of the upper, a middle sole formed of textile material impregnated with rubber, which is of the same size and shape as the said layer of leather, and secured thereto by mechanical means, and may also be secured to the upper by mechanical means, but such fastenings are independent of the

fastenings to said layer and an outer sole and heel which are vulcanized to the outer surface of the middle sole without any mechanical fastenings.

United States patent No. 790,558, issued to Butterfield, for composite boot or shoe, dated May 23, 1905, discloses a layer of leather called the middle sole, and a layer of vulcanized rubber called the tread sole. Butterfield is doing in a slightly different way just what Kennedy was doing.

United States patent No. 1,306,996, issued to Brown, for shoe, dated June 17, 1919, discloses a shoe bottom made of more than one layer of material, the insole being mechanically secured, the middle sole being in part mechanically secured, the outside sole and heel put in place, and the shoe is vulcanized, thus having an outer sole which is not secured by any mechanical fastenings. The patentee says: "My invention relates to a new and improved shoe of a character which can be manufactured by the methods commonly employed in a rubber shoe factory, as distinguished from methods commonly employed in a leather boot and shoe factory."

The defendant also offered British patent No. 200,383, issued to Greengate and Irwell Rubber Company, Limited, and Walter Hubbard, effective date July 12, 1923. This patent is not prior art, and was offered by defendant "to show people all over the world were doing the same thing at the same time;" the application date being July 22, 1922.

From these patents and the evidence of the experts we find that vulcanization was invented by Goodyear in 1844, and has been almost universally adopted because it increases the strength and elasticity of the rubber and also increases its resistance to heat over a wide range of temperatures; that from the beginning of the use of rubber it has been known that rubber which is clean and has a "tacky" surface can be joined to another piece of rubber in the same condition by simply pressing them together; that it was old in the art and standard practice, if the surface of two pieces have become dry, to coat the two surfaces with benzol or some other solvent, and then, after a pause to permit the surfaces to become tacky, to press the two surfaces together. It was also well-known and standard practice, where rubber has lost its original tacky surface condition and such tackiness cannot be restored by cleaning with a solvent, to resort to a rubber cement, and cement was also used with vulcanized rubber.

Rubber cement is a rubber solvent and raw rubber, and the amount of solvent is ordinarily determined by the working conditions.

The patentee in the patent in suit succeeded, in the Patent Office, in distinguishing his invention over the references there cited, and now contends that it is distinguished over the said references because they apply to vulcanized rubber, while the process of the patent in suit is limited to unvulcanized rubber.

Without discussing that question at the moment, we are met on this trial with evidence, which was never before the Patent Office, of several alleged prior uses.

The first alleged prior use is the Hoskins shoes. These shoes were made in 1917, long prior to Cutler's invention, in imitation of English rubber soled shoes, and, as appears by one of the shoes in evidence (Defendant's Exhibit 1), no stitches nor mechanical fastenings of the sole were visible, but the sole was vulcanized.

Then came the so-called Addison Hanan shoes. None of the shoes alleged to have been made for Mr. Addison Hanan, about the same time as the Hoskins shoes, were produced, and, while I do not question the veracity of any of the witnesses, I am clearly of the opinion that the evidence of such alleged prior use, both in the case of the Hoskins shoes and the Addison Hanan shoes, is not sufficiently strong to comply with the requirements which have been laid down by the courts in like cases. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153.

In 1921 the English introduced the use of crepe rubber for soles for sport shoes; the idea having originated with the young men on the rubber plantations at Colombo, and been communicated by them to their firms, who began to introduce them on the English market.

Mr. Wilson, importer of crude rubber, saw crepe rubber soled shoes in London in September, 1921, and received a number of pairs as samples from London in the fall of 1921, which he in turn distributed among his friends whom he thought might be interested.

Mr. Cutler, the patentee of the patent in suit, was shown an English shoe with a crepe rubber sole, on May 1, 1922.

The English, in making the crepe rubber soled shoes, followed common English practice, and cemented the soles, which proved satisfactory because of the careful way in which the English cement rubber to leather.

This appears to be true, notwithstanding the statement in British patent No. 200,383, supra, which speaks of these rubber soles cemented directly to the leather as "inclined" to separate from the leather.

This brings us to the crepe rubber soled shoes made by Hanan & Son. About the same time in the spring of 1922 that Mr. Cutler saw the crepe soled English shoe, Mr. H. W. Hanan, of the firm of Hanan & Son, was in London, and evidently saw crepe rubber soled shoes and purchased and sent to Brooklyn some crepe rubber in sheets, which was received in Brooklyn about the middle of May, 1922; the invoice being dated May 3, 1922. Apparently he must have sent some cable or letter of instructions, but the same cannot be found.

Orders were then given (of which Exhibits A and C are samples), and under direction of Mr. Brunell, the superintendent of the Hanan factory, manufacture began.

He first made a sample with a single layer of rubber at the fore part and two layers at the heel, one of which was a wedge to form a spring heel, and tried to sew the sole thus made up entirely around its edges. In doing this, he met with difficulty because, if the sewing machine was properly set to sew the single thickness, the thread would draw down into and cut the rubber at the double thickness.

He then made the shoes with the heel wedge sewed to the equivalent of a welt at the heel and a single full sole layer "sewed aloft" to the welt at the fore part of the shoe, and such single layer brought down over the heel wedge and cemented to it, no stitches passing through the outer sole at the heel portion, as illustrated in the shoes, Exhibits T, B, and E.

The records of Hanan & Son are well kept, except that the particular method of construction is not fully shown on the order, but the lots of shoes manufactured are given a lot number, and the progress of each lot through the factory is fully shown. To show the exact construction, however, it is necessary to obtain one of the shoes, and then by its lot number its date of manufacture can be readily ascertained, and that is what was done in this instance, as there were obtained from one of the retail stores Exhibits B and T, which are of the same lot number, 87926 L, and there came back to them because of a loose lining, Exhibit E, which was of lot No. 87911 L.

On May 17, 1922, the assistant general manager of Hanan & Son's retail stores wrote out orders to make a quantity of shoes for each of a number of stores; Exhibit A being for two lots, No. 87925 L and No. 87926 L, seven pairs each, and Exhibit C for two lots, No. 87909 L and No. 87911 L, for seven pairs each, soles made of "new H. W. Hanan rubber." The making of these shoes was shown, not only by oral testimony, but by the written records of Hanan & Son and the shoes, Exhibits B and T. These shoes were cut June 1, 1922, leveled June 29, 1922, at which time the sole was completed, certain finishing was done, and the shoes completed July 12, 1922, and shipped July 18, 1922. The sole of the shoe, Exhibit E, was leveled July 20, 1922.

The soles of these shoes were made of unvulcanized rubber of the kind known as crepe rubber, there was the wedge at the heel portion, which was sewed to the equivalent of a welt, and an outer sole which was sewed to the fore part of the shoe and cemented to the wedge at the heel portion, whereby these portions became unified.

Although the two layers of rubber in Exhibits B, E, and T appear only at the heel, the inventor's thought, if there was any invention, is fully exemplified, and no limit can be set to the carrying forward of the wedge, because, if desired, it can be carried to the toe. These shoes evidently gave satisfaction, as about 1,000 pairs were made.

In the face of these shoes, made as they were before the application of the patentee in the patent in suit was filed, Exhibits B and T having been some time even before the date to which the patentee has attempted to carry back his invention, the shoes even having been shipped on that day, if it be held that there is any invention by the patentee in the patent in suit, it must consist simply in carrying forward the inner layer shown at the heel portion of said Exhibits B and T, and this at most would seem to me to be only the act of a skilled workman, desirous of improving the looks of the shoe. Smith v. Nichols, 21 Wall. (88 U. S.) 112, 22 L. Ed. 566.

Some time after Hanan & Son began to make shoes like Defendant's Exhibits B and E, the construction was somewhat changed by their superintendent, as he said, to "make a better looking shoe." This construction was described as having one layer of crepe rubber sewed to the welt entirely around the shoe, then two wedges of crepe rubber cemented to this first or midsole, at the heel, and then the outer sole cemented to this midsole and to the heel wedges, the outer sole

being shaped up at the instep to make a spring heel.

This type of shoe was shown by Mr. Brunell, the superintendent, as he testified, to Mr. Addison Hanan (now dead) and Mr. Laycock, in charge of Hanan & Son's retail stores, and the making of these shoes was also testified to by Mr. O'Brien, who was cutting soles.

Mr. Brunell believes this type of shoe was made in July or August, 1922, while Mr. O'Brien believes it was in August or September, but the time that this change was made cannot be definitely fixed, due to the fact that a change of this kind could be made by the superintendent in the Hanan factory, it does not appear on any of the orders, and the earliest shoe of this type which Hanan & Son was able to produce was Exhibit D, which had been ordered February 20, 1923, and completed April 5, 1923.

This was after the date of the filing of his application by the patentee of the patent in suit, and, while I have no doubt of the truthfulness of the witnesses, the evidence is not sufficient, under the strict rule which the courts have enforced, to find that shoes of the type of Defendant's Exhibit D were made early enough to constitute a prior use. The Barbed Wire Patent, supra; Deering v. Winona Harvester Works, supra.

The application for the patent in suit was filed October 4, 1922, some three months after the completion of the soles of Defendant's Exhibits B and T, on June 29, 1922, and nearly three months after they were shipped on July 18, 1922, and Exhibit E was leveled July 20, 1922.

Mr. Cutler has sought to carry the date of his invention back to July 18, 1922, but to do this he offered only his oral testimony and the testimony of a clerk in the office of Mr. Hodder, Mr. Cutler's patent attorney, who read an extract from the diary of Mr. Hodder, and then described certain soles which he said Mr. Hodder had told him were the samples brought by Mr. Cutler, although the diary referred to "sample" not "samples," and at that time Mr. Cutler was sending out sample soles of one-unit crepe rubber and did not begin sending out the two-unit soles until, as he says, "our patent attorney told us we were protected," which it appears to me could not have been before October 4, 1922, the date of filing his application.

Even if Mr. Cutler did give Mr. Hodder, on July 25, 1922, two soles, one thicker than the other, and two additional soles that had been stuck together, that would not prove

that he had then developed the process of the patent in suit, because that process provides for the fastening of the inner sole by mechanical means and then causing the outer sole to adhere by the use of benzol.

Mr. Hodder was alive at the time of the trial, and, if he could not be present, his testimony could have been taken by deposition, as he was one person who could have given a satisfactory explanation of his diary entry.

[2] This evidence was offered to antedate a prior use by Hanan & Son, supported, not only by oral, but by documentary testimony and some of the articles manufactured, and it is incumbent on the patentee to do so with testimony of at least the quality of that by which the prior use is established. Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 492, 11 S. Ct. 846, 35 L. Ed. 521; Westinghouse Elec. & Mfg. Co. v. Catskill Ill. & P. Co., 121 F. 831, 834, 58 C. C. A. 167.

This he has failed to do, and the date of his invention must be fixed as of the date of filing his application, October 4, 1922.

Exhibits B and T were completed even before July 18, 1922, the earliest date claimed by Mr. Cutler. In any event, it is clear that no one connected with Hanan & Son could have seen Mr. Cutler's two-unit crepe rubber soles before Exhibits B, E, and T were made.

Mr. Cutler is a rubber chemist and not a shoemaker, but was assisted by men in the shoemaking factory of Young & Co. Of course Mr. Cutler knew, as did all rubber workers, that a solvent such as benzol would produce an effective joint; shoemakers, however, were using rubber cement composed of a solvent and raw rubber, and, when applied to a raw rubber surface, that surface is softened and the rubber that was dissolved in the solvent merges with the surface so softened, to the extent that the solvent is present, and when the mass is pressed together a homogeneous block of rubber is formed.

From Mr. Cutler's testimony, it would appear that he did much experimenting in a very short space of time, whereas the men in the Hanan factory, who were practical shoemakers, moved from step to step in line with what seems to me to have been the teaching of the art.

Notwithstanding Mr. Cutler's experiments he apparently advanced step by step, in the same manner as the workmen in the Hanan factory. When they received the crepe rubber, they commenced by attempting to sew the sole all the way around, but, finding dif-

ficulty with the heel portion, they then sewed the heel wedge of crepe rubber to the equivalent of a welt at the heel, and sewed aloft a single full sole layer of crepe rubber to the welt at the fore part of the shoe, and brought it over the heel wedge to which they cemented it. This they found satisfactory, although Mr. Cutler said that, in his experiment with sewing aloft, he found that crepe rubber would not hold the stitches, but he afterwards said the stitching had nothing to do with his "turning to the invention."

The Hanan workmen thereafter adhered a second layer of raw rubber to the one which had been sewed aloft, and covered the stitches to improve the appearance of the shoe, and followed the shoemaker's art by using for that purpose an old and to them well-known rubber cement (Montgomery No. 1), while Mr. Cutler, as it appears to me, received the approval of Mr. Young without a test when he caused the outer layer to adhere to the inner layer and hide the stitches, for the very same reason, that it improved the appearance of the shoe.

Both Hanan's men and Mr. Cutler in the beginning followed the American custom of sewing aloft, while the British workmen followed their practice of securing the sole with cement; and yet we find that, on July 22, 1922, an application was filed for a British patent by Greengate and Irwell Rubber Company, Limited, and Walter Hubbard, disclosing the same structure as the patent in suit with an improvement which Cutler did not adopt until 1924.

We thus have three sets of mechanics, in England, New York, and Massachusetts, without any connection with each other, doing the same thing in the same way with a new material, which goes to prove that it was simple and obvious. Elliott & Co. v. Youngstown Car Mfg. Co., 181 F. 345, 349, 104 C. C. A. 175.

In addition to which as we have seen the following facts appear: Cutler did not first suggest the idea of using crepe rubber for soles; on the contrary, that idea came from England. Sewing aloft was old and standard American practice for vulcanized rubber soles. The use of a covering or double sole which hid the stitches or other mechanical fasteners was old, particularly in rubber soles. The use of a solvent such as benzol to soften the surfaces of two layers of raw rubber to be joined was old, and the ordinary practice of the rubber worker, who also knew that such solvent produced a unified mass.

It therefore seems to me that the patent in suit is invalid for want of invention, because Cutler was doing what the art taught, and that did not constitute invention, but was simply what other skilled workmen were doing at the same time at other places. Atlantic Works v. Brady, 107 U. S. 192, 199, 2 S. Ct. 225, 27 L. Ed. 438.

Furthermore, it seems to me that the patent in suit is invalid, because all that Cutler did was to substitute one material for another, viz. crepe rubber for vulcanized rubber, in the shoes of the prior art, and crepe rubber was not discovered by him. New York Belting & Packing Co. v. Sierer, 158 F. 819, 86 C. C. A. 79.

[3] I am not unmindful of the presumption of validity given to an issued patent, but it is only a presumption that may be rebutted by proof, and I think the proof sufficient in this case.

[4] Neither am I unmindful that a process, the steps of which are old, may be patentable when co-operating with each other they produce a result that is new and useful, but I do not agree with the plaintiff that the making of vulcanized rubber shoes was not an analogous art, and all that the patent in suit discloses was shown in the Godfrey patent, No. 34,682, the only difference being that in that patent the soles were made of vulcanized rubber, the midsole mechanically secured, and the outer sole cemented to the midsole, and I am unable to see any invention in causing the contacting surfaces of two layers of crepe rubber, to which a solvent such as benzol has been applied, to adhere, in view of the tendency displayed by the two-unit sole (Defendant's Exhibit H) to contact without the application of a solvent or cement, because it seems to me to be perfectly obvious.

[5] This is not a case where the question of invention is in doubt and may be sustained by proof of commercial success, but, if it was, the evidence does not show that the crepe rubber soles of the plaintiff have supplanted all others, because it has sold 800,000 to 1,000,000 pairs of Rajah soles in three years and but 430,000 pairs of these in 1924, while the United States Rubber Company alone is making 6,000,000 to 8,000,000 pairs of vulcanized soles annually.

There is no evidence to show how many crepe rubber soles were sold by others, although Mr. Cutler says that the 430,000 Rajah soles sold by the plaintiff in 1924 is only a small proportion of the total number made by all, but the evidence does not show that the total number of crepe rubber soles made even

approximates the number of vulcanized soles made by the United States Rubber Company alone.

Whatever success crepe rubber soles have had, has been due to the inherent quality of the rubber and not to the method of the patent in suit.

No long-felt want was filled by the patent in suit as crepe rubber soled shoes were on sale in London in 1921, some were brought over to this country in the fall of 1921, both Mr. Cutler and Hanan & Son had the subject called to their attention in the spring of 1922, Hanan & Son completed the soles of Exhibits B and T by June 29, 1922, and the application for the patent in suit was filed October 4, 1922.

If, however, I am in error, and invention may be found in applying the process described in the patent in suit, then such patent was anticipated by Hanan & Son in their prior use in the manufacture of Exhibits B, E, and T, all of which were completed some time before the filing of the application of the patentee for the patent in suit.

The patent in suit is invalid, both for want of invention, and by reason of anticipation; but, even if it were valid, no infringement by the defendant Cantilever Shoe Shop, Inc., has been shown.

A decree may be entered as to both defendants, dismissing the complaint with costs.